Ronald PETERSON, et al., Respondents,

v.

BASF CORPORATION, a foreign corporation, Appellant.

No. C3–02–857.

Supreme Court of Minnesota.

March 30, 2006.

James A. O'Neal, John P. Borger, Winthrop A. Rockwell, Bruce Gregory Jones, John P. Mandler, Faegre & Benson LLP, Minneapolis, MN; and Kenneth F. Johannson, Crookston, MN, for Appellant BASF Corp.

Hugh V. Plunkett, III, Scottsdale, AZ; and J. Michael Schwartz, Minneapolis, MN, for Respondent Ronald Peterson.

Douglas J. Nill, Minneapolis, MN, for Respondents Barry Thune and Christopher Grove Farms and Ronald Peterson.

Wayne D. Struble, Bowman and Brooke, Minneapolis, MN, for Amicus The Product Liability Advisory Council, Inc.

Lawrence S. Ebner, McKenna Long & Aldridge LLP, Washington, DC, for Amicus CropLife America.

Evan M. Tager, Mayer, Brown, Rowe & Maw LLP, and Robin S. Conrad, Washington, DC, for Amicus Chamber of Commerce of the United States.

Todd Anders Noteboom, Leonard Street & Deinard, Minneapolis, MN, for Amicus National Assoc. of Independent Insurers.

Michael Robert Docherty, Minneapolis, MN, for Amicus Tort Reform Association and Amicus American Tort Reform Association.

William F. Mohrman, Mohrman & Kaardal, P. A., Minneapolis, MN, for Amicus Washington Legal Foundation.

Scott W. Johnson, Minneapolis, MN, for Amicus National Assoc. of Manufacturers/American Chemistry.

Mike Hatch, Attorney General, Prentiss Edward Cox, St. Paul, MN, for Amicus Minnesota Attorney General.

Bruce Michael Kleven, ST. Paul, MN, for Amicus American Sugarbeet Growers Association.

J. Gordon Rudd, Jr., Zimmerman Reed PLLP, Minneapolis, MN, for Amicus Minnesota Trial Lawyers Association.

David Ryan Moeller, Farmers Legal Action Grp. Inc., St. Paul, MN, for Amicus Minnesota Farmers Union.

## OPINION

ANDERSON, RUSSELL A., Chief Justice.

In February 2004, we affirmed the judgment for respondents Ronald Peterson, et al., in this class action against appellant BASF Corporation for violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. §§ 56:8–1 to –106 (West 2001), in BASF's marketing and advertising of its herbicides Poast and Poast Plus. *Peterson v. BASF Corp.*, 675 N.W.2d 57 (Minn.2004) ("*Peterson III*"). BASF petitioned the United States Supreme Court for a writ of certiorari. In an order filed May 2, 2005, the Court granted the writ of certiorari, vacated the judgment, and remanded for reconsideration in light of *Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 125 S.Ct. 1788, 161 L.Ed.2d 687 (2005), a recently-decided case on preemption under the Federal Insecticide, Fungicide, and Rodenticide Act

("FIFRA"), 7 U.S.C. §§ 136–136y (2000). *BASF Corp. v. Peterson*, 544 U.S. 1012, 125 S.Ct. 1968, 161 L.Ed.2d 845 (Mem.) (2005). *Bates* confirms our earlier conclusion that the respondents' claims are not preempted by FIFRA, and we therefore affirm the court of appeals.

The facts and procedural history of this case are explained in our initial decision, 675 N.W.2d at 61–65, and need not be recounted in detail here. BASF is a corporation that develops, produces, and markets herbicides. Respondents ("farmers") are a nationwide class of farmers [1] who alleged that BASF violated the NJCFA by deceptively advertising and marketing two BASF herbicides, Poast and Poast Plus. Evidence introduced at trial established that the two products, when applied according to label instructions, contain the same amount of the same active ingredient per acre.[2] Both products were registered with the Environmental Protection Agency ("EPA") under FIFRA for use on the same crops, including both major crops and minor crops.[3] Nevertheless, pursuant to a marketing strategy to maximize profits based on the different economics of the major and minor crop herbicide markets, BASF did not register Poast Plus with state regulators for use on most minor crops and its label did not indicate it was

---

1. The class does not include farmers from North Dakota who participated in a separate class action against BASF that was settled.

2. Poast Plus contains 13% sethoxydim, while Poast contains 18%. However, when mixed and used according to the directions, they both have a gallons-to-acres-covered ratio of 0.19%. In other words, they provide the same amount of active ingredient per acre when correctly applied. Poast Plus also contains an "adjuvant" (an ingredient that modifies the action of the principal ingredient). But in order to use Poast, farmers must add an adjuvant. In fact, when registering Poast

Plus with the FDA as safe for use on minor crops, BASF claimed that no further study of Poast Plus's effects on minor crops was needed because "the proposed label directions for use in the above listed crops for Poast Plus are identical to those for the registered product Poast Herbicide."

3. "Major" crops include such crops as soybeans, peanuts, cotton, and corn, which are grown in huge quantities for low prices. "Minor" crops, such as sugarbeets, vegetables, and fruits are grown on fewer acres but bring a much higher profit per acre.

suitable for use on minor crops.[4] BASF furthered this marketing plan by use of advertising and literature, and other conduct, that BASF's internal documents indicated were intended to prevent farmers from learning that the lower-priced Poast Plus was EPA-registered for minor crops and was the active-ingredient equivalent of Poast.

The farmers brought this class action suit against BASF under the New Jersey Consumer Fraud Act in 1997. The district court certified the class action in 1999. In 2000, the court denied BASF's motion to decertify the class, but granted BASF's motion for summary judgment, concluding that BASF's actions did not violate the NJCFA. On appeal, the Minnesota Court of Appeals reversed the summary judgment, holding that there was a question of fact as to whether BASF had violated the NJCFA. *Peterson v. BASF Corp.*, 618 N.W.2d 821, 825–26 (Minn.App.2000) (*"Peterson I"*). This court denied BASF's petition for review.

The case proceeded to trial, at the end of which the jury unanimously found by special verdict that BASF had violated the NJCFA. The jury found $15 million in damages to the class members, which was trebled as required by the NJCFA. N.J. Stat. Ann. § 56:8–19 (West 2001). With the addition of attorney fees, available to prevailing plaintiffs under the NJCFA, *id.*, and interest, judgment was entered for the farmers in the amount of $52,058,931.51.

BASF appealed on numerous grounds, including as relevant here federal preemption of the state-law claims, erroneous admission of prejudicial evidence, and improper denial of BASF's requested jury instructions. The court of appeals affirmed. *Peterson v. BASF Corp.*, 657 N.W.2d 853 (Minn.App.2003) (*"Peterson II"*). BASF petitioned this court for review; the petition included the preemption issue, but did not include any express reference to evidentiary or jury instruction issues. We granted review and affirmed in *Peterson III.*

BASF petitioned the United States Supreme Court for a writ of certiorari. The Court granted the writ, vacated the judgment, and remanded the case to this court for reconsideration in light of a recently-decided FIFRA preemption case, *Bates*, 544 U.S. 431, 125 S.Ct. 1788.[5] BASF *Corp.*, 125 S.Ct. 1968. As *Bates* only involved the issue of FIFRA preemption, we review only the preemption aspect of our decision in *Peterson III. See In re Linehan*, 594 N.W.2d 867, 871 (Minn.1999).

---

**4.** There are few herbicides that can be used on minor crops, which means there is little price competition in that area. In contrast, the herbicide market for major crops is competitive. BASF's goal, as stated in its 1990 marketing plan, was to price Poast Plus low to effectively compete with other major crop herbicides while keeping the price of Poast high to exploit the lack of competition in the minor crop market.

**5.** This type of Supreme Court action, granting, vacating, and remanding, is known as a "GVR order." It is not a ruling on the merits.

[A] GVR order is neither an outright reversal nor an invitation to reverse; it is merely

a device that allows a lower court that had rendered its decision without the benefit of an intervening clarification to have an opportunity to reconsider that decision and, if warranted, to revise or correct it. The GVR order itself does not constitute a final determination on the merits; it does not even carry precedential weight.

*Gonzalez v. Justices of Mun. Court of Boston*, 420 F.3d 5, 7 (1st Cir.2005) (citation omitted). *See also South Dakota v. United States Dept. of Interior*, 423 F.3d 790, 796 n. 5 (8th Cir.2005) ("A GVR does not compel a particular determination or outcome, but occurs often when an intervening development may affect the outcome of the case.").

BASF raises two main claims that it contends should be reviewed under *Bates*. First, BASF argues that under the *Bates* analysis the consumer fraud claims that are the foundation of this case are preempted by FIFRA, and therefore the case must be dismissed. In the alternative, BASF argues that even if the claims are not preempted as a matter of law, erroneous rulings regarding evidence and jury instructions mandate a new trial under *Bates.*

## I.

The starting point for any preemption analysis is the statute itself, because the touchstone of preemption is Congressional intent. *E.g., Malone v. White Motor Corp.,* 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978). We therefore begin our analysis with a brief summary of FIFRA, which is described in more detail in our initial opinion. *Peterson III,* 675 N.W.2d at 61–62. FIFRA is a federal statute that regulates pesticides.[6] FIFRA requires federal registration of pesticides with the EPA and imposes labeling requirements. 7 U.S.C. §§ 136(p), (q), (ee); 136a(a); 136j(a)(2)(G); 136w(c)(3) (2000); 40 C.F.R. § 156.10 (2005). Under FIFRA, a pesticide may only be distributed or used on a particular crop if: (1) the EPA has registered it for that crop, and (2) the farmer uses the pesticide in conformity with its label. 7 U.S.C. §§ 136(ee), 136a(a). Under FIFRA, even if the EPA registers a pesticide for a given type of crop, the producer need not include that use on the label—it may label for only a "subset" of EPA-approved uses. 40 C.F.R. § 152.130(b) (2005). This is known as "subset labeling."

FIFRA does not establish an exclusively federal regime of pesticide regulation; it expressly reserves some regulatory authority to the states. 7 U.S.C. § 136v(a) (2000) ("A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter."). With regard to labeling, FIFRA declares that states are not allowed to add new and different labeling requirements to the FIFRA standards. 7 U.S.C. § 136v(b) (2000) ("Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.").

As the Supreme Court remanded specifically for reconsideration in light of its decision in *Bates,* we will review that decision in detail. In *Bates,* Texas peanut farmers ("Texas farmers") sought damages from Dow Agrosciences LLC ("Dow") for injury to their crops caused by application of a Dow pesticide. The pesticide had been registered with the EPA under FIFRA and labeled for use "in all areas where peanuts are grown." *Bates,* 544 U.S. at 434, 125 S.Ct. at 1793. Application of the product not only failed to control weeds, it severely damaged the Texas farmers' peanut crops. *Id.* The Texas farmers alleged that Dow knew or should have known that use of the product on soil with a high Ph level like the Texas farmers' would damage the peanuts, but Dow nevertheless claimed both on the product label and in its equivalent sales pitches that the product could be used in all areas. *Id.* The Texas farmers sued Dow on several legal grounds, including strict liability, negligence, fraud, breach of warranty, and violation of the Texas Deceptive Trade Practices–Consumer Protection Act. *Bates,* 125 S.Ct. at 1793–94.

---

**6.** Under FIFRA, "weed" is included in the definition of "pest" and herbicide therefore is included in the term "pesticide." 7 U.S.C. § 136(t), (u) (2000).

The district court held that these claims were preempted by FIFRA. The United States Court of Appeals for the Fifth Circuit affirmed, reading the FIFRA preemption provision, 7 U.S.C. § 136v(b), to preempt any state law claim in which "a judgment against Dow would induce it to alter its product label." *Bates*, 125 S.Ct. at 1793 (quoting *Dow Agrosciences v. Bates*, 332 F.3d 323, 331 (5th Cir.2003)).

The Supreme Court reversed, rejecting the broad "inducement" test employed by the court of appeals and adopting a more narrow test for FIFRA preemption under section 136v(b). *Bates*, 125 S.Ct. at 1791. The Court initially explained that in an earlier case it had rejected a claim that FIFRA preempted a local ordinance that required a permit for aerial application of pesticides even though the ordinance imposed requirements not found in FIFRA, because the Court had concluded that "FIFRA was not 'a sufficiently comprehensive statute to justify an inference that Congress had occupied the field to the exclusion of the States.'" *Bates*, 125 S.Ct. at 1797 (quoting *Wisconsin Pub. Intervenor v. Mortier*, 501 U.S. 597, 607, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991)). Rather, the Court had concluded, "[FIFRA] leaves ample room for States and localities to supplement federal efforts * * *." *Id.* (quoting *Mortier*, 501 U.S. at 613, 111 S.Ct. 2476).

The Court then turned to the specific preemption language of section 136v(b), which provides: "Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter." Interpreting this provision, the Court first explained that it applies only to "requirements" imposed by the state and declared that "[t]he Court of Appeals was therefore quite wrong when it assumed that any event, such as a jury verdict, that might 'induce' a pesticide manufacturer to change its label should be viewed as a requirement." *Bates*, 125 S.Ct. at 1798.[7]

■ The Court proceeded to delineate the scope of preemption established by section 136v(b) by describing the characteristics a state law requirement must have for preemption to apply:

> For a particular state rule to be preempted, it must satisfy two conditions. First it must be a requirement *"for labeling or packaging"*; rules governing the design of a product, for example, are not pre-empted. Second, it must impose a labeling or packaging requirement that is *"in addition to or different from* those required under [FIFRA]." A state regulation requiring the word "poison" to appear in red letters, for instance, would not be preempted if an EPA regulation imposed the same requirement.

*Bates*, 125 S.Ct. at 1798. Thus, the Court established, first, that a state law claim is not preempted under FIFRA unless it imposes a requirement, and, second, that a requirement is not preempted unless it satisfies two factors: it must be a requirement (1) for labeling or packaging, (2) that is in addition to or different from FIFRA requirements.

The Court next applied these factors to the Texas state law claims asserted in *Bates*. First, the Court held that the claims for defective design, defective manufacture, negligent testing, and breach of

---

7. The Court explained that state common law standards, as well as statutes and regulations, on which liability is based can constitute requirements. *Id.* In *Bates* the Court focused primarily on the Texas common law claims. In contrast, here the claims involve statutory liability under the NJCFA.

express warranty were not preempted, because none of the common law rules on which those claims were based "requires that manufacturers label or package their products in any particular way." *Bates,* 125 S.Ct. at 1798. In particular, the Court ruled that the breach of express warranty claim was not a requirement for labeling or packaging even though Dow had placed its express warranty on the pesticide's label. *Id.* at 1798–99. The Court explained that the state common law rule requiring the manufacturer to honor its voluntary contractual warranty commitment did not require the manufacturer to provide a warranty or to say anything in particular in that warranty and therefore was not a requirement for labeling or packaging.[8] *Id.* In this context, the Court again rejected the reasoning of the court of appeals that a state claim would be preempted if an adverse ruling would "induce" the manufacturer to change its label. The Court stated:

> In arriving at a different conclusion, the court below reasoned that a finding of liability on these claims would "induce Dow to alter [its] label." 332 F.3d at 332 (footnote omitted). This effects-based test finds no support in the text of § 136v(b), which speaks only of "requirements." *A requirement is a rule of law that must be obeyed; an event, such as a jury verdict, that merely motivates an optional decision is not a requirement.* The proper inquiry calls for an examination of the elements of the common-law duty at issue, see *Cipol-*

*lone[ v. Liggett Group, Inc.],* 505 U.S., [504] at 524[, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) ]; it does not call for speculation as to whether a jury verdict will prompt the manufacturer to take any particular action (a question, in any event, that will depend on a variety of cost/benefit calculations best left to the manufacturer's accountants).

*Id.* at 1799 (emphasis added).

The Court viewed the Texas farmers' fraud and negligent-failure-to-warn claims differently. The Court explained that the common law duties underlying those claims *were* requirements for labeling and packaging, because those claims were based on allegations that false statements and inadequate warnings *on the product label* violated the state-imposed standards of conduct. *Id.* at 1799–1800.

But that alone was not enough to establish preemption. The Court then addressed the remaining prong of the FIFRA preemption test, whether the state-law labeling and packaging requirements were "in addition to or different from" FIFRA requirements. The Court emphasized that "a state-law labeling requirement is not pre-empted by § 136v(b) if it is equivalent to, and fully consistent with, FIFRA's misbranding provisions." *Bates,* 125 S.Ct. at 1800.[9] The Court explained at length the foundation and rationale for this "parallel requirements" reading of section 136v(b). *Bates,* 125 S.Ct. at 1800–03. The Court summarized the limited scope of

---

8. The Court pointed out further that because the common law warranty claim was not preempted, the Texas farmers' statutory claim was not preempted to the extent it was based on breach of warranty. *Id.* at 1799 n. 18.

9. The Court explained that FIFRA requires truth in labeling under its provisions that prohibit labels from containing "false or misleading" statements and inadequate instruc-

tions or warnings. 7 U.S.C. §§ 136(q)(1)(A), (F), and (G) (2000). Thus, a state requirement that precludes false or deceptive statements about a product can be enforced against label content as long as the state requirement is equivalent in relevant part to these FIFRA requirements. *Bates,* 125 S.Ct. at 1800.

FIFRA preemption regarding pesticide labeling as follows:

> In sum, under our interpretation, § 136v(b) retains a narrow, but still important, role. In the main, it pre-empts competing state labeling standards—imagine 50 different labeling regimes prescribing the color, font size, and wording of warnings—that would create significant inefficiencies for manufacturers. The provision also pre-empts any statutory or common-law rule that would impose a labeling requirement that diverges from those set out in FIFRA and its implementing regulations. It does not, however, pre-empt any state rules that are fully consistent with federal requirements.

*Bates,* 125 S.Ct. at 1803 (footnote omitted).

Acknowledging that the parties had not adequately briefed the issue of whether the Texas common law fraud and failure-to-warn claims imposed duties of truth in labeling greater than those imposed by FIFRA, the Court remanded that issue to the court of appeals. In conjunction with that remand to determine if the state and federal labeling requirements were equivalent, the Court explained that in order to "ensure that nominally equivalent labeling requirements are *genuinely* equivalent," if the case went to trial the jury should be instructed on the relevant FIFRA misbranding standards and regulations. *Bates,* 125 S.Ct. at 1804.

It is significant that the Court also made the point that a state requirement applicable to oral statements does not qualify as a requirement for "labeling or packaging" covered by section 136v(b). The Court observed:

> To the extent that petitioners' warranty and fraud claims are based on oral representations made by Dow's agents, they fall outside the text of § 136v(b) for an independent reason. Because FIFRA defines labeling as "all labels and all other written, printed, or graphic matter" that accompany a pesticide, § 136(p)(2), any requirement that applied to a sales agent's *oral* representations would not be a requirement for "labeling or packaging."

*Bates,* 125 S.Ct. at 1798 n. 17. Even the concurrence and dissent echoed this narrow view of the "labeling or packaging requirement" factor, in explaining that "[a] state-law cause of action, even if not specific to labeling, nevertheless imposes a labeling requirement 'in addition to or different from' FIFRA's when it attaches liability to *statements on the label* that do not produce liability under FIFRA." *Bates,* 125 S.Ct. at 1805 (Thomas, J., concurring in part and dissenting in part) (emphasis added).

## II.

From our careful reading of *Bates,* we conclude that the United States Supreme Court adopted in that case narrower standards for finding preemption under FIFRA than we applied in our earlier decision. We stated that the issue was "whether one could reasonably foresee that the manufacturer, in seeking to avoid liability for the error, would choose to alter the product or label." *Peterson III,* 675 N.W.2d at 71 (*quoting Worm v. Am. Cyanamid Co.,* 5 F.3d 744, 747–48 (4th Cir. 1993)). This was essentially the effects-based test used by the Fifth Circuit in *Bates* that was emphatically rejected as too broad by the Supreme Court. See pp. 125 S.Ct. at 1797, 1799, *supra.* We also cited favorably a federal district court decision addressing FIFRA preemption in the context of a claim under the New Jersey Consumer Fraud Act in which the court ruled that "[w]hen advertising or promotional materials merely repeat information or language contained on the label,

claims directed at the advertising necessarily challenge the label itself and are therefore preempted." *Peterson III* at 70 (quoting *Mortellite v. Novartis Crop Protection, Inc.*, 278 F.Supp.2d 390, 401 (D.N.J.2003)). In *Bates*, the Supreme Court rejected this approach. Even though, as the Court had observed earlier in the opinion, the oral sales presentations at issue in *Bates* were the equivalent of statements on the product label, 125 S.Ct. at 1793, the Court explained that to the extent the farmers' warranty and fraud claims imposed liability based on oral representations made by sales agents, those claims would not be preempted because they would not be requirements for "labeling or packaging." *Id.* at 1798 n. 17. The Court's rejection of the effects-oriented inducement test and its refusal to view regulation of oral statements, even those that mirror label language, as requirements for labeling or packaging, demonstrate that state regulation must be very directly related to labeling and packaging in order to invoke FIFRA preemption.

As in our earlier decision, our conclusion on remand turns on this crucial determinant. That is, FIFRA preemption applies only if the state requirement on which liability is based is directly addressed to labeling or packaging. We concluded initially, and we do so again, that the farmers' claims that BASF engaged in fraud, deception, and unconscionable conduct in violation of the New Jersey Consumer Fraud Act are based on BASF's marketing and advertising actions and not on the content of the product labels.[10]

BASF makes two broad arguments in seeking relief based on *Bates*. First, BASF contends that the farmers' claims are preempted under FIFRA and BASF is entitled to prevail as a matter of law. Second, BASF argues that at a minimum it is entitled to a new trial based on evidentiary rulings and denial of jury instructions. We address these arguments in turn.

### A. FIFRA Preemption

BASF's contention that farmers' claims are preempted as a matter of law is based on three sub-arguments. First, BASF contends that the core of the farmers' claims is that BASF impermissibly marketed Poast and Poast Plus as separate products, when they are really one and the same. BASF asserts that as it was required under FIFRA to label Poast and Poast Plus separately, the farmers' claims must be preempted because they would impose liability for conduct required by FIFRA. Second, BASF asserts that the farmers claim that BASF's labeling of Poast Plus for fewer crops than it was registered for with the EPA violated the NJCFA. BASF argues that because FIFRA expressly allows manufacturers to "subset" label EPA-registered products, the farmers' claims seek to impose liability for conduct that is expressly allowed by FIFRA labeling regulations, and the farm-

---

10. The provision of the NJCFA that BASF was found to have violated provides:

The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice * * *.

N.J. Stat. Ann. § 56:8–2 (West 2001). BASF does not contend every claim brought under this statute would be preempted by FIFRA, so it is necessary to assess the particular claims asserted by the farmers in this case.

ers' claims are therefore preempted. Third, BASF argues that the farmers' claims would require a manufacturer to market a product in all 50 states and for all crops for which it is EPA-registered, regardless of the manufacturer's concerns that additional testing is needed to assure safe and efficacious use in all areas or on all crops. BASF argues that this aspect of the farmers' claims is contrary to *Bates* because of the Court's acknowledgement in that case of the continued regulatory role of the states and the fact that tort claims are not preempted under FIFRA in order to encourage manufacturers to exercise caution in the labeling of their products.

■ The salient question for purposes of FIFRA preemption, as made crystal clear in *Bates,* is whether the farmers' claims under the New Jersey Consumer Fraud Act impose a requirement for labeling or packaging that is in addition to or different from FIFRA requirements. The farmers assert that their claims are not based on the content of the product labels, but rather on the deceptive, fraudulent, and unconscionable nonlabel actions of BASF in pursuing its planned marketing strategy to segment the use of Poast and Poast Plus. As we said in our initial decision:

> The court of appeals * * * held that "the farmers' claims were based on BASF's misleading statements and omissions as to the EPA-authorized uses of the products, not on the claims that BASF committed fraud in the labeling or packaging." *Peterson II,* 657 N.W.2d at 865. Further, the court of appeals noted that "the farmers here were not asserting that BASF's registration and container labels were false or mislead-

ing, * * * [r]ather, the farmers' point was that *even if* BASF's labels were technically accurate, BASF could and did commit consumer fraud by leading farmers to believe that the cheaper Poast Plus could only be used on major corps * * *." *Id.*

*Peterson III,* 675 N.W.2d at 70.

As before, we believe the farmers and the court of appeals more accurately characterize the nature of the farmers' claims. The farmers presented evidence that BASF advertised Poast Plus as only "registered" for use on four major crops, cotton, soy beans, peanuts, and alfalfa, when it was EPA-registered for numerous minor crops as well. BASF advertised that Poast was the "only" post-emergent grass herbicide registered for use on minor crops, although Poast Plus was also registered for use on minor crops. A BASF executive candidly admitted this was a material omission. Additionally, BASF attempted to prevent word from spreading that Poast Plus was EPA-registered for use on minor crops. BASF had its public relations firm submit for publication a magazine article discussing increased enforcement of fines for failing to follow label recommendations, and BASF falsely told the North Dakota Department of Agriculture that BASF could not add crops that were on the Poast label to the Poast Plus label because the EPA would require it to do further residue testing, which would cost the company millions of dollars.[11] In this case the conduct that violated the New Jersey Consumer Fraud Act was not the labeling or packaging of Poast and Poast Plus, but BASF's deceptive advertising, literature, magazine articles, and misrepresentations to North Dakota authorities.

---

**11.** In contrast, in seeking registration for Poast Plus for minor crops, BASF had told the EPA, and the EPA agreed, that no additional residue testing was necessary because Poast Plus used the same active ingredient in the same quantity per acre as the already-tested and registered Poast. See n. 3, *supra.*

The conduct at issue is analogous to the oral sales representations that the Supreme Court found in *Bates* to be outside the scope of FIFRA preemption, which is narrowly limited to regulation of the label and packaging itself.

Based on the record, we again reject BASF's characterization of the farmers' claims as requiring that the two products be labeled as one. While the farmers might have believed that would have been a more honest approach for BASF to take, that was not the factual or legal basis for their claims. The duty the farmers' claims imposed on BASF was not to register and label Poast and Poast Plus as one product, but rather, having registered and labeled them separately, to refrain from deceptive statements about their EPA registration, their active ingredient composition, and their relative efficacy on major and minor crops.

For the same reasons, we cannot agree with BASF that the farmers' claims seek to impose liability for BASF's choice to use subset labeling, which is allowed under FIFRA. Again, the farmers' claims do not challenge the legality of BASF's subset labeling, but rather its misrepresentations about the products, their registration, and their capacities noted above.

With regard to BASF's third argument, that the farmers' claims would require marketing products in all 50 states and on all crops for which they are EPA-registered, regardless of the manufacturer's concerns for safety and the need for additional testing, we note first that this is a policy-oriented argument that is not founded on the preemption criteria under FIFRA. Moreover, we are compelled to observe that under the facts of this case the argument bears little credibility. BASF assured the EPA that no additional testing was required for its registration of Poast Plus for minor crops because the results would be the same as those it had submitted in support of its registration of Poast. Furthermore, evidence was submitted that established that the choice in this case to limit state registration and availability of Poast Plus for use on minor crops was a marketing decision intended to maximize profits, not generated by safety concerns.[12]

Regarding BASF's arguments that farmers' claims should be preempted by FIFRA as a matter of law, we note in conclusion that in light of the Supreme Court's clarification of the appropriate FIFRA preemption standards, it has become even more apparent that the debate in this case is not about the correct preemption standard or about the legal standard imposed by application of the New Jersey statute in the context of the farmers' claims. Instead, the fundamental debate is simply about how the farmers' claims are accurately characterized.[13] Because

---

12. For instance, BASF indicated in its 1990 marketing plan that its goal was to price Poast Plus low to effectively compete with other major crop herbicides while keeping the price of Poast high to exploit the lack of competition in the minor crop market. Additionally, when the North Dakota Commissioner of Agriculture contacted the EPA to inquire about the Poast Plus registration, she was informed that the EPA had already registered Poast Plus for all crops for which Poast was registered (and had done so at BASF's request), and that BASF was not allowing Poast Plus use on minor crops for marketing reasons.

13. Indeed, in terms of characterizing claims, although BASF avoids presenting them as such, it appears to us that its arguments that the farmers' claims would require BASF to label Poast and Poast Plus as one product and to market it in all states for all crops are in reality "effects-based" arguments. That is, the success of farmers' claims might induce such conduct on the part of BASF. But, as explained above, the Supreme Court soundly

we conclude that the record supports the farmers' characterization of their claims as based on nonlabel conduct, under *Bates* there is no FIFRA preemption.

### B. Evidence and Jury Instruction Rulings

BASF argues that even if the farmers' claims are not pre-empted by FIFRA, BASF is nevertheless entitled to a new trial because (a) evidence about the contents of the Poast Plus and Poast labels was introduced at trial, "inviting the jury to hold BASF liable for fraud on the basis of the labeling," and (b) the court refused to instruct the jury regarding FIFRA labeling regulations, which BASF claims is required by *Bates*.

■ First, the farmers contend correctly that these arguments were procedurally waived by BASF. Although BASF made these arguments to the court of appeals in *Peterson II* and the court rejected them, *see* 657 N.W.2d at 871–73, BASF did not mention either evidentiary rulings or jury instructions in its statement of issues or otherwise in its petition for review to this court from *Peterson II*. We ruled in *Peterson III* that issues must be raised in a petition for review or they are waived. 675 N.W.2d at 66–67; *see also Hapka v. Paquin Farms*, 458 N.W.2d 683, 686 (Minn.1990). Moreover, the evidentiary issues were not raised in BASF's briefs to this court in *Peterson III*. Jury instructions were not raised as an independent claim of error, but as support for BASF's preemption argument. It is well-established that failure to address an issue in brief constitutes waiver of that issue. *E.g., Melina v. Chaplin*, 327 N.W.2d 19, 20 (Minn.1982).

Furthermore, these arguments were not automatically preserved as part of BASF's preemption argument. Although BASF ties these arguments to preemption because their resolution in some degree is related to the nature and permissible scope of the farmers' claims and BASF's defenses, these arguments are more accurately viewed as challenges to trial rulings about evidence and jury instructions. They are not the same as BASF's legal argument that farmers' claims are preempted by FIFRA.

Finally, BASF is not permitted to resurrect these waived arguments because of a change in the law by the Supreme Court in *Bates*. These arguments were available to BASF (and were made by BASF in *Peterson II*) prior to *Bates*. Nothing the Supreme Court said in *Bates* created new law that made these arguments newly-available, particularly in view of the fact that the Court narrowed the test for FIFRA preemption in *Bates*, rather than expanding it.

Even if these arguments were not waived, BASF would not prevail. First, BASF objects to the district court's decision to allow information from the Poast and Poast Plus labels to be introduced at trial. The evidence to which BASF objects includes the names of the products, the percentages of active ingredients in each, the instructions for use, and the approved uses. BASF claims this evidence should have been excluded because it was irrelevant to any nonlabel-based claim and was strongly prejudicial, because it may have permitted the jury to consider whether the label information was deceptive in reaching its verdict.

■ "The district court has broad discretion in ruling on evidentiary matters and we will not overturn a district court's evidentiary rulings unless appellant shows a clear abuse of discretion * * *." *State*

rejected the effects-based inducement test for FIFRA preemption in *Bates*.

*v. Steward*, 645 N.W.2d 115, 120 (Minn. 2002). Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Minn. R. Evid. 401. However, relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Minn. R. Evid. 403.

■ The district court admitted the evidence of the chemical composition of Poast and Poast Plus, instructions for their use, and other label information because it provided background for the evidence of non-label conduct that the farmers claimed was deceptive. We conclude that given the significant degree of relevance and the high standard of Minn. R. Evid. 403 (the evidence must be *substantially more prejudicial than probative* before it is excluded), the district court did not abuse its discretion in admitting the evidence.

Next, BASF claims that it is entitled to a new trial because the district court refused to instruct the jury regarding FIFRA regulations, specifically:

· That EPA regulations "required BASF to register Poast and Poast Plus as separate products."

· That "EPA's regulations prohibited BASF from using the exact same name for Poast and Poast Plus."

· That "EPA regulations allow manufacturers to distribute or sell pesticides under labeling bearing any subset of the directions for use approved by the EPA."

· That "EPA allows a company to label an herbicide for fewer crops than registered by the EPA."

· That "[a] manufacturer of pesticides has no duty under federal or state law to label pesticides for specific crop uses."

· That the jury could not find "[t]he omission of any information from, or the inclusion of any information on" the Poast Plus label to be a violation of the NJCFA.

· That every state requires separate registration of pesticides and may deny registration and bar use of the pesticide notwithstanding EPA registration.

BASF argues that the court's refusal to give these instructions violated the Supreme Court's statement in *Bates* that courts "should instruct the jury on the relevant FIFRA misbranding standards, as well as any regulations that add content to those standards." *Bates*, 125 S.Ct. at 1804.

■ Given the context of the Court's statement about jury instructions in *Bates*, we do not understand it to require instructions on FIFRA regulations in every case in which FIFRA preemption is raised. As explained above, the Court interpreted two of the Texas farmers' claims in *Bates* to be based on the truth or falsity of the content of the product label. This raised the question whether the legal standard imposed on the label content by the Texas common law claims was equivalent to the misbranding standards in FIFRA, an issue the Court determined had not been adequately briefed. In remanding for a determination on that issue, the Court also addressed the hypothetical scenario of that issue of equivalence of state and federal labeling requirements going to trial. In that context, the Court raised the issue of jury instructions, stating:

To survive pre-emption, the state-law requirement need not be phrased in the *identical* language as its corresponding FIFRA requirement; indeed, it would be surprising if a common-law requirement used the same phraseology as FI-

FRA. If a case proceeds to trial, the court's jury instructions must ensure that nominally equivalent labeling requirements are *genuinely* equivalent. If a defendant so requests, a court should instruct the jury on the relevant FIFRA misbranding standards, as well as any regulations that add content to those standards. For a manufacturer should not be held liable *under a state labeling requirement* subject to § 136v(b) unless the manufacturer is also liable for misbranding as defined by FIFRA.

*Bates,* 125 S.Ct. at 1804 (third emphasis added).

■ Thus, when liability under state law is alleged to arise based on the content of the label, the court must ensure, through jury instructions if requested, that the defendant is not held liable based on a state standard that is substantively different than the FIFRA misbranding standards. This case, however, did not involve claims of deceptive labeling, but rather deceptive nonlabel conduct.

Moreover, appellate review of jury instructions is limited:

When determining the adequacy of jury instructions, this court reviews for an abuse of discretion. The district court has considerable latitude in selecting language for jury instructions. Jury instructions are viewed as a whole to determine whether they fairly and adequately explain the law. An instruction is error if it materially misstates the law.

*State v. Moore,* 699 N.W.2d 733, 736 (Minn.2005) (internal citations omitted). The district court's decision must be viewed in the context of the case. During the trial, BASF presented extensive expert testimony on the nature of FIFRA and its regulations. Additionally, BASF admits that the farmers never asserted that BASF violated FIFRA. The farmers'

closing and opening statements describe and dwell on BASF's advertising misstatements and its false statements to government officials, mentioning labeling and registration only to explain the nature of the marketing scheme. Finally, BASF's attorney argued extensively in closing about FIFRA, state registration, and their relevance to the case. Given this context, the jury had already been informed at length that BASF was compliant with labeling laws and that BASF could not be held liable for its labels. The court did not want to confuse the jury with instructions on labeling law when it was not alleged that BASF had labeled incorrectly. Therefore, the district court refused to include the requested jury instructions.

As the court of appeals stated in rejecting this argument:

BASF's proposed instructions do not relate directly to the charge before the jury, which was whether BASF violated the NJCFA. Further, throughout the entire trial, the jury heard numerous discussions of these issues and the various witnesses' descriptions of the effect of the regulations. These topics were more properly the subject of counsel's final argument rather than jury instructions, and the court did not abuse its discretion in denying the request to include these instructions.

*Peterson II,* 657 N.W.2d at 871. We agree and conclude that the district court did not abuse its discretion in denying the requested jury instructions.

Affirmed.

PAGE and ANDERSON, G. BARRY, JJ., took no part in the consideration or decision of this matter.

GILDEA, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this matter.

BLOOMQUIST, Acting J.[14]