Jill **ENGQUIST**, as parent and natural guardian of Amber Engquist, a minor, Respondent,

v.

Steven **LOYAS**, et al., Appellants.

No. A09–1760.

Supreme Court of Minnesota.

Sept. 21, 2011.

Roger L. Kramer, Kramer Law LLC, Mendota Heights, MN, for respondent.

LeAnne D. Miller, Rajkowski Hansmeier, Ltd., St. Cloud, MN, for appellants.

## OPINION

DIETZEN, Justice.

Respondent Jill Engquist, as parent and natural guardian of the minor, Amber Engquist, commenced an action under Minn.Stat. § 347.22 (2010) for injuries Amber sustained as a result of a dog bite that occurred at the residence of appellants, Steven and Christina Loyas. The jury found that Amber provoked the dog to bite her, and the district court entered judgment in favor of appellants. The court of appeals reversed on the ground that the jury instruction given by the district court misstated the meaning of provocation under the statute, and remanded for a new trial. We affirm.

On July 11, 2006, 9–year–old Amber Engquist was invited by her friend Gabrielle to spend the night at the appellants' residence. Appellants owned a black Labrador retriever named Bruno. At the time of the incident, Gabrielle, her younger sister, two cousins, and Amber were playing hide-and-seek in the basement of the Loyases' home. Amber had never been around Bruno before that day. During the game, Amber and Gabrielle hid in a small crawl space beneath the basement steps. The crawl space was an enclosed area consisting of a stairwell and at least one sidewall. Amber and Gabrielle called Bruno into the crawl space with them. The crawl space was completely dark, and Amber could not see Bruno or Gabrielle. While in the crawl space, Amber reached out for Bruno and attempted to hug or put her arm around the dog. Bruno responded by growling at her, and when Amber moved backwards, Bruno lunged at her and bit her in the face.

As a result of the attack, Amber sustained injuries to her eyelid and to the area below her chin. Amber's medical treatment consisted of surgery to reattach the eyelid and a series of rabies vaccinations. Her eye and her vision were not affected. She has some minor scarring related to the dog bite, but will not need plastic surgery.

Amber sued the Loyases to recover damages for the dog attack under Minn. Stat. § 347.22. At trial, the Loyases argued that Amber had provoked the dog, and thus the statutory requirements for recovery were not met. Over the parties'

objections, the district court instructed the jury as follows:

> If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained.

> PROVOCATION

> You will be asked whether Amber Engquist provoked the dog to bite her by a deliberate, voluntary act. Provoke means to engage in any act, which excites, stimulates, irritates, arouses, induces or enrages.

The jury determined that Amber provoked the dog, and that she sustained $21,419.51 in damages as a result of the dog bite. Consequently, the district court entered judgment in favor of the Loyases.

On appeal, the court of appeals determined that the jury instruction materially misstated the law, and therefore reversed on the issue of liability and remanded for a new trial. *Engquist v. Loyas*, 787 N.W.2d 220, 223–27 (Minn.App.2010). But the court affirmed the trial court on the issue of damages and denied respondent's motion for judgment notwithstanding the verdict. *Id.* at 226–27. We granted the Loyases' petition for review.

## I.

Appellants argue that the court of appeals erred by concluding that the jury instruction on provocation under Minn. Stat. § 347.22 materially misstated the law and was prejudicial to respondent. Respondent contends that the court of appeals was correct to remand for a new trial on liability.

▆ We review a district court's decision on jury instructions for an abuse of discretion. *Rowe v. Munye*, 702 N.W.2d 729, 735 (Minn.2005) (citing *Hilligoss v. Cargill, Inc.*, 649 N.W.2d 142, 147 (Minn. 2002)). Generally, the district court has broad discretion in determining jury instructions, and we will not reverse where the instructions taken as a whole fairly and correctly state the applicable law. *Stewart v. Koenig*, 783 N.W.2d 164, 166 (Minn. 2010) (quoting *Hilligoss*, 649 N.W.2d at 147); *see also Peterson v. BASF Corp.*, 711 N.W.2d 470, 484 (Minn.2006). But a district court errs if it gives a jury instruction that materially misstates the law or is erroneous, and results in prejudice to the complaining party. *Rowe*, 702 N.W.2d at 735 (citing *State v. Kuhnau*, 622 N.W.2d 552, 556 (Minn.2001)); *see also Lewis v. Equitable Life Assurance Soc'y of the U.S.*, 389 N.W.2d 876, 885 (Minn.1986) (citing *McDonough v. Brite Lite Elec. Co.*, 304 N.W.2d 28, 29 (Minn.1981)). Additionally, the interpretation of a statute is a question of law that we review de novo. *Zurich Am. Ins. Co. v. Bjelland*, 710 N.W.2d 64, 68 (Minn.2006).

The parties dispute the nature of the dog owner's liability and the meaning of "provocation" under the dog-attack statute, Minn.Stat. § 347.22. The statute provides:

> If a dog, without provocation, attacks or injures any person who is acting peaceably in any place where the person may lawfully be, the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog but the owner shall be primarily liable. The term "dog" includes both male and female of the canine species.

Minn.Stat. § 347.22. To determine the nature of a dog owner's liability and the

meaning of provocation [1] under the statute, it is helpful to review the common law liability of a dog owner, the history of the dog-attack statute, and the relevant case law interpreting the statute.

The dog-attack statute was adopted in 1951, and was revised in 1980 and 1986.[2] The 1980 and 1986 amendments made three minor changes to the statute: (1) deleted the phrase "in any urban area," (2) added the phrase "but the owner shall be primarily liable" to the definition of "owner," and (3) made the statute gender neutral.[3] But the amendments did not change the meaning of the word "provocation" within the statute. The statute, however, does not explicitly describe the meaning and availability of the defense of provocation under the statute.

■ Minnesota recognizes a common law cause of action for an attack by an animal. *See Fake v. Addicks*, 45 Minn. 37, 38, 47 N.W. 450, 451 (1890). This case is relevant because it has been cited by our court to explain the nature of a dog owner's liability and the defense of provocation under section 347.22. In *Fake*, the injured person brought a claim for common law liability against the dog owner for the dog's attack. 45 Minn. at 37, 47 N.W. at 450. We concluded the evidence was sufficient to establish both that the dog was dangerous and that the vicious nature of

the dog was known to the owner. *Id.* at 37–38, 47 N.W. at 451. Notably, we described the nature of this common law liability: "The *gravamen* of the action is the neglect of the owner of an animal, known by him to be vicious and liable to attack and injure people, to restrain him so as to prevent the risk of damage...." *Id.* at 38, 47 N.W. at 451. Also, we discussed the type of conduct by a plaintiff-victim that would avoid liability by the dog owner. Specifically, we quoted with approval from *Muller v. McKesson*, 73 N.Y. 195, 201 (1878) that:

> If a person, with full knowledge of the evil propensities of an animal wantonly excites him or voluntarily and unnecessarily puts himself in the way of such an animal, he would be adjudged to have brought the injury upon himself, and ought not to be entitled to recover. In such a case it cannot be said, in a legal sense, that the keeping of the animal, which is the *gravamen* of the offence, produced the injury....

*Fake*, 45 Minn. at 39–40, 47 N.W. at 452.

■ Previously, we have interpreted the dog-attack statute in three cases that are relevant to this dispute: *Lavalle v. Kaupp*, 240 Minn. 360, 61 N.W.2d 228 (1953); *Seim v. Garavalia*, 306 N.W.2d 806 (Minn. 1981); *Bailey v. Morris*, 323 N.W.2d 785 (Minn.1982). Our previous interpretation

---

1. The statute also examines whether the injured person was "acting peaceably in any place where the person may lawfully be." This requirement in the statute is not at issue here.

2. Act of Apr. 12, 1951, ch. 316, § 1, 1951 Minn. Laws 1, 414 (codified at Minn.Stat. § 347.22 (1952)); Act of Mar. 3, 1980, ch. 347, § 1, 1980 Minn. Laws 27, 27; Act of Mar. 25, 1986, ch. 444, § 1, 1986 Minn. Laws 775, 776.

3. The cumulative revisions to the statute are as follows:

> If a dog, without provocation, attacks or injures any person who is <u>acting</u> peaceably ~~conducting himself~~ in any place where ~~he~~ the person may lawfully be ~~in any urban area,~~ the owner of the dog is liable in damages to the person so attacked or injured to the full amount of the injury sustained. The term "owner" includes any person harboring or keeping a dog <u>but the owner shall be primarily liable.</u> The term "dog" includes both male and female of the canine species.

of a statute guides us in determining its meaning. *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC,* 790 N.W.2d 167, 172 (Minn.2010) (interpreting the statutory phrase "without notice" consistent with prior case law); *see also Sandal v. Tallman Oil Co.,* 298 Minn. 264, 268, 214 N.W.2d 691, 693 (1974); *Zochrison v. Redemption Gold Corp.,* 200 Minn. 383, 390, 274 N.W. 536, 540 (1937); *Allen v. Indep. Sch. Dist. No. 17,* 173 Minn. 5, 6–7, 216 N.W. 533, 534 (1927). Thus, we next examine those three relevant cases.

In *Lavalle,* we considered whether liability under section 347.22 would survive the death of the defendant. 240 Minn. at 361, 61 N.W.2d at 229. Under Minn.Stat. § 573.01 (1949), an action based on personal injuries would survive the death of the defendant only if the injuries were the result of the negligence of the defendant. We rejected the plaintiff's argument that a section 347.22 claim implicates negligence per se and concluded that the statute establishes "strict liability in damages, irrespective of any question of negligence and without the proof of *scienter* as at common law." *Lavalle,* 240 Minn. at 363, 61 N.W.2d at 230. Thus, unlike the common law liability of the dog owner, liability under the statute does not require proof of scienter, that is, the owner's knowledge that the dog was dangerous.[4] Instead, the court equated the statutory liability created by the dog-attack statute with the liability at common law for the keeper of a

wild animal, for which there is no requirement to prove the owner's knowledge of dangerousness.[5] We stated: "The statute leaves the dog owner in the same position which the common law left the keeper of a wild animal; namely, with the strict liability of an insurer." *Lavalle,* 240 Minn. at 363, 61 N.W.2d at 230.

Similarly, in *Seim,* we stated that the dog-attack statute put the dog owner " 'in the same position which the common law left the keeper of a wild animal.' " *Seim,* 306 N.W.2d at 811 (quoting *Lavalle,* 240 Minn. at 363, 61 N.W.2d at 230). The issue in *Seim* was whether the trial court erred in submitting the issue of the dog-attack victim's contributory negligence to the jury, pursuant to Minnesota's enactment of a comparative fault regime. *Seim,* 306 N.W.2d at 808–09. The meaning of provocation was not at issue on appeal. The trial court had directed a verdict in favor of the plaintiff-victim on the issue of provocation, and no appeal was brought on that issue. *Id.* at 809 n. 3. We found that the Legislature had the power "to carve out or preserve exceptions to the [comparative fault] statute" and that section 347.22 was such an exception. 306 N.W.2d at 812. Thus, we concluded that liability of the dog owner under section 347.22 is absolute, and is not based on the negligence of the dog owner, subject only to the requirements of the statute and the defense of provocation. 306 N.W.2d at

---

4. As illustrative of the common law rules, the court cited, inter alia, *Olson v. Pederson,* 206 Minn. 415, 288 N.W. 856 (1939). *Lavalle,* 240 Minn. at 363 n. 5, 61 N.W.2d at 230 n. 4. In *Olson,* the court stated the general common law rule as: "[T]he owner is liable for harm done by his dog, which he has reason to know has dangerous propensities abnormal to its kind to cause harm to others. . . ." 206 Minn. at 416, 288 N.W. at 857 (citing *Fake,* 45 Minn. at 37, 47 N.W. at 450).

5. Common law liability of the keeper of a wild animal is similar to the common law liability of the owner of a domestic animal that is known by the owner to be dangerous. *Compare* Restatement (Second) of Torts § 507 (1977), *with* Restatement (Second) of Torts § 509 (1977). The difference between the two forms of liability is, as noted, that in order to establish liability for harm done by a domestic animal, there must be proof that the owner knew or had reason to know of the animal's dangerous propensities.

812. In *Seim*, we held that the absolute liability created by the dog-attack statute cannot be reduced based on the ordinary negligence of the plaintiff-victim. *See id.* In so concluding, we expressly rejected all other types of liability, including strict liability, which allows consideration of defenses not provided for in the statute. *Id.* at 810–12.

We addressed the defense of provocation under the dog-attack statute most directly in *Bailey*. The plaintiff-victim argued that, as a matter of law, merely petting or playing with a dog cannot be provocation because provocation must be intentional. *Bailey*, 323 N.W.2d at 787. Initially, we noted that other jurisdictions with similar statutes have construed provocation to include unintentional acts. *Id.* We concluded that "provocation must be voluntary, thus inviting or inducing the injury." *Id.* Our conclusion rested on our reasoning in *Fake* that when "a person voluntarily and unnecessarily provokes a vicious animal, and thus invites or induces the injury, knowing the probable consequences, he is not entitled to recover." *Fake*, 45 Minn. at 39, 47 N.W. at 451, *discussed in Bailey*, 323 N.W.2d at 787. Pursuant to *Bailey*, knowledge of the danger is an element of the "voluntariness" necessary for the plaintiff's conduct to constitute provocation under the statute and bar recovery. Consequently, provocation focuses on the plaintiff-victim's conduct and requires both the plaintiff's direct knowledge of the danger and that the plaintiff-victim voluntarily exposed herself to that danger.

The Legislature has not amended Minn. Stat. § 347.22 in response to our decision in *Bailey* that the statute requires that the plaintiff-victim have knowledge of the danger and voluntarily expose herself to that danger in order for the provocation element of the statute to be satisfied. Because the Legislature has not acted, we assume that the Legislature has acquiesced in our interpretation. *See State, Dep't of Pub. Safety v. Ogg*, 310 Minn. 433, 436, 246 N.W.2d 560, 562 (1976) (determining that the failure to amend a statute following interpretation of the statute by this court despite "several" intervening legislative sessions suggests the Legislature has acquiesced in the court's decision); *see also* Minn.Stat. § 645.17(4) (2010) ("[W]hen a court of last resort has construed the language of a law, the legislature in subsequent laws on the same subject matter intends the same construction to be placed upon such language."). Accordingly, we apply the provocation standard adopted in *Bailey*.

 Based upon our prior construction of Minn.Stat. § 347.22, we conclude that a dog owner's liability under the statute for a dog attack on a plaintiff-victim is absolute, subject to the requirements of the statute and the defense of provocation. Absolute liability under the statute does not require negligence on the part of the dog owner, and is not barred by the contributory negligence of the plaintiff-victim. But a plaintiff-victim is not entitled to recover for a dog attack that is the result of provocation within the meaning of the statute. Provocation under the statute has a narrower meaning than contributory negligence. Specifically, a plaintiff-victim who voluntarily and unnecessarily provokes a dog in a manner that invites a dog attack is not entitled to recover. It is not necessary that the plaintiff-victim intend to provoke the dog. Rather, provocation involves voluntary conduct that exposes the person to a risk of harm from the dog, where the person had knowledge of the risk at the time of the incident. The question of whether a dog was provoked within the meaning of the statute in a given case is primarily a question of fact for the jury.

## II.

■ We next examine whether the jury instruction given by the district court materially misstated the law regarding the nature of the dog owner's liability and the application of the provocation defense. The jury instruction consisted of two parts: the first part set forth the language of the statute verbatim and the second part attempted to describe the defense of provocation. The second part stated: "You will be asked whether Amber Engquist provoked the dog to bite her by a deliberate, voluntary act. Provoke means to engage in any act, which excites, stimulates, arouses, induces or enrages."

We conclude that the jury instruction did not adequately explain the dog owner's liability and materially misstated the meaning of provocation under the statute. The jury should have been instructed that the dog owner's liability is absolute, subject to the statutory defense of provocation. Moreover, the instruction erroneously described the meaning of provocation. For example, under the district court's instruction, a jury could find provocation where a person is bitten as a result of innocently petting a dog who, unknown to the victim, is by nature or as a result of some painful condition inclined to attack anyone who touches the dog. Provocation could even be found if the dog had never bitten anyone in the past and acted entirely uncharacteristically in attacking the plaintiff. Because the jury could have found provocation without any consideration of the victim's knowledge of the danger, much less the victim's voluntary exposure to the danger, we conclude that the jury instructions materially misstated the law and prejudiced the respondent.

Finally, we review whether the court of appeals' proposed jury instruction on provocation accurately states the law. The proposed jury instruction states:

A person provokes a dog when, by voluntary conduct, and not by inadvertence, the person invites or induces injury. Mere physical contact with a dog, or conduct that results in stimulating a dog, does not constitute provocation unless the danger of injury is apparent when the person acts to invite or induce injury.

*Engquist,* 787 N.W.2d at 225–26. We conclude that the proposed jury instruction does not accurately state the law for several reasons. First, the proposed jury instruction fails to state that the dog owner's liability under the statute is absolute, subject to the statutory defense of provocation. Also, the proposed instruction does not fully explain the meaning of provocation under the statute. Specifically, the proposed instruction fails to indicate that a plaintiff-victim who voluntarily provokes a dog in a manner that invites a dog attack is not entitled to recover. It is not necessary that the plaintiff-victim intended to provoke the dog. Rather, provocation involves voluntary conduct by the plaintiff-victim that exposes the plaintiff-victim to a risk of harm from the dog of which the plaintiff-victim had knowledge at the time of the incident.

Accordingly, we affirm the decision of the court of appeals to remand for a new trial. But we reject the court of appeals' proposed jury instruction for the reasons stated herein.

Affirmed as modified.