*298 OPINION
DIETZEN, Justice.
Respondent Thomas V. Engfer ended his employment with General Dynamics Advanced Information Systems, Inc., in December 2011. Thereafter, Engfer applied for and received state unemployment benefits from appellant Department of Employment and Economic Development (DEED), and supplemental unemployment benefits through a plan offered by General Dynamics. DEED subsequently reviewed the SUB plan payments, determined that the payments counted as “wages” under MinmStat. § 268.035, subd. 29(a) (2014),[1] and concluded that Engfer had been overpaid state unemployment benefits. An unemployment-law judge (ULJ) affirmed DEED’S overpayment determination. The court of appeals reversed, concluding that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461 (2012), preempts a timing provision in MinmStat. § 268.035, subd. 29(a)(13), which requires that a SUB plan “provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits” in order for the supplemental payments to be excluded from the definition of “wages.” The court of appeals therefore concluded that Engfer was entitled to keep the state unemployment benefits. We affirm the decision of the court of appeals.
Thomas Engfer was laid off by his employer General Dynamics Advanced Information Systems as part of a workforce reduction. When Engfer’s employment ended, he was offered the opportunity to participate in a SUB plan established by General Dynamics. The weekly SUB plan payments were intended to supplement Engfer’s weekly state unemployment benefits, and when combined, equaled 100 percent of his normal weekly gross pay prior to termination. The SUB plan required Engfer to apply and be found eligible for state unemployment benefits and to contact General Dynamics’ plan management firm on a weekly basis to confirm his continued eligibility for those benefits. According to the plan, Engfer would receive SUB plan payments, even when ineligible for state unemployment benefits, in three separate circumstances: (1) during the 1-week “waiting period” for state unemployment benefits, (2) if he had insufficient earnings for state benefits, and (3) if his state benefits expired first. The SUB plan provided 26 weeks of payments, after which Engfer would continue to receive his state unemployment benefits.
Engfer established a benefit account with DEED on December 18, 2011. He began receiving benefits under the SUB plan immediately and state unemployment benefits after the 1-week waiting period. He received $597 every week in state unemployment benefits and $2,369 every 2 weeks in SUB plan payments. The SUB' plan payments continued through July 5, 2012, and ended before Engfer’s eligibility for state unemployment benefits expired. Engfer received a total of $31,398 in payments from the SUB plan.
In January 2013, DEED relied upon the definition of “wages” in Minn.Stat. § 268.035, subd. 29(a), to conclude that Engfer was not eligible for state unemployment benefits during the period he was receiving supplemental payments *299 through the SUB plan. Because the SUB plan paid benefits during weeks in which plan participants were not eligible to receive state unemployment benefits — specifically, the 1-week waiting period — DEED determined that the SUB plan payments do not qualify for the exclusion from “wages” under the Minnesota unemployment statutes. See Minn.Stat. § 268.035, subd. 29(a)(13) (stating that “wages” do not include “payments made to supplement unemployment benefits under a plan established by an employer” if the plan meets certain conditions, including the condition that the plan provides supplemental payments only for those weeks the applicant has been paid unemployment benefits). Therefore, DEED notified Engfer that he had been overpaid $10,746 in state unemployment benefits. See MinmStat. § 268.085, subd. 3(a)(2) (2012) (providing generally that applicants are not eligible to receive unemployment benefits for weeks they have received payments that are considered “wages” equal to or in excess of their unemployment benefit amount).
Engfer appealed the overpayment determination, and a ULJ affirmed. Engfer requested reconsideration, but did not challenge the ULJ’s conclusion that, under MinmStat. § 268.035, subd. 29(a)(13), the SUB plan payments qualify as “wages.” Instead, Engfer argued that the SUB plan was not valid under ERISA, 29 U.S.C. §§ 1001-461. The ULJ again affirmed, concluding that whether the SUB plan was valid under ERISA was not relevant to the determination of whether the plan provisions affected Engfer’s eligibility for state unemployment benefits.
The court of appeals reversed the ULJ’s decision in a divided decision, concluding that ERISA preempts the timing provision in MinmStat. § 268.035, subd. 29(a)(13), which provides that, in order for SUB plan payments to be excluded from the definition of “wages,” “[t]he plan must provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits.” Engfer v. Gen. Dynamics Adv. Info. Sys., Inc., 844 N.W.2d 236, 241 (Minn.App.2014). The dissent concluded that the provision is not preempted by ERISA. 844 N.W.2d at 244 (Schellhas, J., dissenting). We granted review to resolve the ERISA preemption issue.
I.
DEED argues that the court of appeals erred in concluding that ERISA preempts what we refer to as “the timing provision” of Minn.Stat. § 268.035, subd. 29(a)(13), which provides that, in determining eligibility for state unemployment benefits, SUB plan payments are excluded from the definition of “wages” only if, among other conditions, the plan “provide[s] supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits.” Specifically, DEED argues that the timing provision does not “relate to any employee benefit plan” under 29 U.S.C. § 1144(a), and therefore the timing provision is not preempted by ERISA. Alternatively, DEED argues that the General Dynamics plan is exempt from ERISA coverage under 29 U.S.C. § 1003(b) because the plan is maintained solely for the purpose of complying with applicable unemployment compensation laws. Engfer responds that the court of appeals correctly ruled that there was no overpayment of state unemployment benefits because ERISA preempts the timing provision.-
This appeal concerns the interpretation and application of the ERISA preemption clause, which provides:
Except as provided-in subsection (b) of this section, the provisions of this sub- *300 chapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.
29 U.S.C. § 1144(a). To resolve the preemption question, we will first address whether the timing provision in MinmStat. § 268.035, subd. 29(a)(13), “relate[s] to” an “employee benefit plan” under ERISA. 29 U.S.C. § 1144(a). We then will address whether the General Dynamics plan is exempt from ERISA coverage under 29 U.S.C. § 1003(b).
Statutory interpretation is a question of law that we review de novo. In re Welfare of J.J.P., 831 N.W.2d 260, 264 (Minn.2013). Our goal in interpreting a state statute is to ascertain and effectuate the intent of the Legislature. Minn. Stat. § 645.16 (2014). When interpreting a statute, we give words and phrases their plain and ordinary meaning. Staab v. Diocese of St. Cloud, 813 N.W.2d 68, 72 (Minn.2012). Further, we read the statute as a whole and give effect to all of its provisions. Our first step is to examine the language of the statute to determine whether it is ambiguous. Premier Bank v. Becker Dev., LLC, 785 N.W.2d 753, 759 (Minn.2010). Statutory language is ambiguous only if, as applied to the facts of the particular case, it is susceptible to more than one reasonable interpretation. Am. Family Ins. Grp. v. Schroedl, 616 N.W.2d 273, 277 (Minn.2000). If the statutory language is unambiguous, we must enforce the plain meaning of the statute and not explore the spirit or purpose of the law. Premier Bank, 785 N.W.2d at 759.
Our approach in interpreting a statute enacted by Congress is the same. We first examine the language of the statute and give the words used their ordinary meaning. Lawson v. FMR LLC, — U.S. -, 134 S.Ct. 1158, 1165, 188 L.Ed.2d 158 (2014). When a statute’s language is plain, the sole function of the courts is to enforce the statute according to its terms. Sebelius v. Cloer, — U.S.-, 133 S.Ct. 1886, 1896, 185 L.Ed.2d 1003 (2013). We must presume that “a legislature says in a statute what it means and means in a statute what is says.” Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Thus, when the words of the statute are unambiguous, the first step is also the last, and “judicial inquiry is complete.” Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981).
A,
We begin our analysis with the state statutory provision. The Minnesota Unemployment Insurance Law provides temporary partial wage replacement to workers who are unemployed through no fault of their own. MinmStat. § 268.03; subd. 1 (2014). An applicant is not eligible for state unemployment benefits for any week he or she receives “wages” from his or her employer after completion of employment. See MinmStat. § 268.085, subd. 3(a)(2) (2012). The term “wages” is defined in Minn.Stat. § 268.035, subd. 29 (2014).[2] The statute excludes certain types of pay *301 ments from the definition of “wages,” including payments made under SUB plans that meet certain statutory conditions. See Minn.Stat. § 268.035, subd. 29(a)(1)-(17).
Subdivision 29(a)(13) generally excludes SUB plan payments from the definition of “wages.” Under Minn.Stat. § 268.035, subd. 29(a)(13), “payments made to supplement unemployment benefits under a plan established by an employer” are not “wages” for purposes of Minnesota unemployment law. But the statute requires that the plan satisfy the following conditions in order for the exclusion to be available:
The plan must provide supplemental payments solely for the supplementing of weekly state or federal unemployment benefits. The plan must provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment benefits. The supplemental payments, when combined with the applicant’s weekly unemploymént benefits paid, may not exceed the applicant’s regular weekly pay. The plan must not allow the assignment of supplemental payments or provide for any type of additional payment. The plan must not require any consideration from the applicant, other than a release of claims, and must not be designed for the purpose of avoiding the payment of Social Security obligations, or unemployment taxes on money disbursed from the plan.
Id. In this case, the General Dynamics SUB plan did not comply with the timing provision, which provides that “[t]he plan must provide supplemental payments only for those weeks the applicant has been paid regular, extended, or additional unemployment'benefits.” Id. Therefore, the supplemental payments that Engfer received under the General Dynamics SUB plan are counted as “wages” for purposes of determining his eligibility for unemployment benefits. Minn.Stat. § 268.035, subd. 29.
B.
There is no dispute that the General Dynamics SUB plan did not comply with the timing provision in Minn.Stat. § 268.035, subd. 29(a)(13). The dispute here centers on whether ERISA preempts the timing provision. ERISA is a comprehensive federal law “designed to promote the interests of employees and their beneficiaries in employee benefit plans.” Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 90, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). ERISA imposes participation, funding, and vesting requirements on employee benefit plans. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 137, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). ERISA also sets various uniform standards, including rules concerning reporting, disclosure, and fiduciary responsibility, for covered plans. Shaw, 463 U.S. at 91, 103 S.Ct. 2890.
The determination of whether a state law is preempted by federal law is a question of congressional intent. Inger-soll-Rand, 498 U.S. at 137-38, 111 S.Ct. 478. Congressional purpose is “the ultimate touchstone” of the preemption inquiry. Id. at 138, 111 S.Ct. 478. According to the Supreme Court, Congress intended to make the regulation of employee benefit plans “exclusively a federal concern,” Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981), and to “avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans,” N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 657, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995). To discern the *302 intent of Congress, we examine the statutory language and the structure of the statute. Id. at 655, 115 S.Ct. 1671; Shaw, 468 U.S. at 95, 108 S.Ct. 2890.
Our analysis begins with the language of the ERISA preemption clause, which provides that the provisions of ERISA “shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title.” 29 U.S.C. § 1144(a). The Supreme Court has observed that the language of the ERISA preemption clause is deliberately broad. Ingersoll-Rand, 498 U.S. at 138, 111 S.Ct. 478. Specifically, ERISA preempts any state law that “relate[s] to any employee benefit plan” described in section 1003(a) and that is not exempt under section 1003(b). 29 U.S.C. § 1144(a). In Alessi, the Supreme Court explained the ERISA preemption analysis under 29 U.S.C. § 1144(a). On the one hand, the Court concluded the only state laws that survive, or fall outside, the broad reach of the ERISA preemption clause are those that do not “relate to” employee benefits plans under section 1003(a) of ERISA. 451 U.S. at 523 n. 20, 101 S.Ct. 1895. On the other hand, a state law that “relate[s] to” employee benefit plans under section 1003(a) of ERISA, may nonetheless “survive ERISA preemption” if all of the employee benefit plans covered by the state law fall within the exception to ERISA coverage under section 1003(b). Id.
DEED concedes that the General Dynamics SUB plan is an “employee benefit plan” under ERISA. An “employee benefit plan” includes an “employee welfare benefit plan” established or maintained by an employer for the purpose of providing its participants or their beneficiaries with certain benefits set forth in ERISA, including unemployment benefits. 29 U.S.C. §§ 1002(1), 1003(a). In this case, General Dynamics established the SUB plan for the purpose of providing plan participants with supplemental unemployment benefits in addition to state or federal unemployment benefits. Therefore, the General Dynamics SUB plan, which is covered by MinmStat. § 268.035, subd. 29(a)(13), satisfies the definition of an “employee benefit plan” described in section 1003(a) of ERISA.[3]
C.
Having established that the General Dynamics SUB plan is an “employee benefit plan” under ERISA, we must next determine whether the timing provision in MinmStat. § 268.035, subd. 29(a)(13), “relate[s] to” the plan for purposes of the ERISA preemption clause, 29 U.S.C. § 1144(a). DEED argues that the timing provision in subdivision 29(a)(13), which requires the SUB plan to pay benefits only for weeks that the plan participant was paid unemployment benefits, does not “relate to” the plan and therefore is not preempted under 29 U.S.C. § 1144(a). According to DEED, the conditions in subdivision 29(a)(13) merely identify the supplemental payments that are excluded from the calculation of an individual’s “wages” for purposes of determining eligibility for state unemployment benefits, and therefore the provision does not interfere with ongoing SUB plan payments or bind plan administrators in a particular way. Engfer responds that there is “no doubt” that the timing provision “relate[s] to” the *303 General Dynamics plan because the provision places restrictions on the timing of supplemental payments by limiting payments only to weeks the applicant has been paid unemployment benefits.
The Supreme Court has held that the phrase “relate to any employee benefit plan” in the ERISA preemption clause, 29 U.S.C. § 1144(a), means a state law that “has a connection with or reference to such a plan.” N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (quoting Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)). The Court has observed that the phrase “relate[s] to” is deliberately broad and expansive, and establishes that regulation of employee benefit plans is exclusively a federal concern. Ingersoll-Rand Co. v. McClendon, 498 U.S. 133, 138, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990). Notably, Congress used equally broad language to define “State law” as “all laws, decisions, rules, regulations, or other State action having the effect of law.” 29 U.S.C. § 1144(c)(1). According to the Court, a state law is preempted “even if the law is not specifically designed to affect [ERISA] plans, or the effect is only indirect.” Ingersoll-Rand, 498 U.S. at 139, 111 S.Ct. 478. Thus, the Court’s ERISA preemption jurisprudence examines whether the state law has a connection with or makes reference to an ERISA employee benefit plan to determine whether the state law “relate[s] to” the plan. Travelers, 514 U.S. at 656, 115 S.Ct. 1671.
We begin our analysis by examining whether the timing provision in Minn. Stat. § 268.035, subd. 29(a)(13), has “a connection with” the General Dynamics SUB plan. Travelers, 514 U.S. at 656, 115 S.Ct. 1671. To determine whether a state law has the forbidden “connection with” an employee benefit plan, we examine the objectives of ERISA as a guide to the scope of the state law that would survive preemption, and the nature of the effect of the state law on the plan. Cal. Div. of Labor Standards Enf't v. Dillingham Constr., N.A., Inc., 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997); see also Travelers, 514 U.S. at 661, 115 S.Ct. 1671.
In Egelhoff v. Egelhoff, the Supreme Court considered whether a Washington state law, which provided for the automatic revocation upon divorce of the spousal beneficiary designation for nonprobate assets consisting of life insurance proceeds and pension plan benefits, had a connection with ERISA-covered plans and therefore was preempted by ERISA. 532 U.S. 141, 143, 121 S.Ct. 1322, 149 L.Ed.2d 264 (2001). Applying the framework from Travelers and Dillingham, the Court concluded that the state statute had an impermissible connection with an ERISA plan because it bound plan administrators to a particular choice of rules for determining beneficiary status. Id. at 147, 121 S.Ct. 1322. Specifically, plan administrators were required to pay benefits to the beneficiaries chosen by the state law, rather than to those identified in the plan documents. Id. The state statute therefore implicated the payment of benefits, an area of core ERISA concern. Id. Moreover, the state statute interfered with nationally uniform plan administration. Id. at 148, 121 S.Ct. 1322. Specifically, plan administrators could not make payments simply by identifying the beneficiary specified in the plan documents; instead, the administrators were forced to familiarize themselves with state statutes in order to determine whether the named beneficiary’s status had been “revoked” by operation of the state law. Id. at 148-49, 121 S.Ct. 1322.
*304 We conclude that the timing provision in Minn.Stat. § 268.085, subd. 29(a)(13), which requires a. SUB plan to pay benefits only for weeks that the plan participant was paid unemployment benefits, has a “connection with” the General Dynamics plan.[4] Two reasons support this conclusion. First, the timing provision in subdivision 29(a)(13) restricts the ability of a SUB plan to supplement state unemployment benefits during certain time periods, such as during the 1-week waiting period for state unemployment benefits. As a result, supplemental benefits paid to an unemployed individual during restricted time periods constitute “wages” and affect the individual’s eligibility for state unemployment compensation benefits. See Minn.Stat. § 268.085, subd. 3(a)(2). Moreover, if the individual is not eligible for state unemployment benefits because the SUB plan payments constitute “wages,” then the individual is not eligible for SUB plan payments either because the SUB plan requires plan participants to prove and maintain eligibility for state unemployment benefits.
Consequently, Minn.Stat. § 268.035, subd. 29(a)(13), operates to undermine the purpose of a SUB plan to supplement state unemployment benefits. The payment of ERISA plan benefits is an area of core ERISA concern. Egelhoff, 532 U.S. at 147, 121 S.Ct. 1322 (concluding that the state law was preempted because it governed the payment of benefits). To avoid this result, plan administrators would need to modify SUB plans for Minnesota participants in order to comply with Minnesota law. Therefore, the state statute requires plan administrators to make certain choices in providing supplemental unemployment benefits to unemployed individuals in Minnesota.[5]
Second, the state law interferes with the ERISA objective of nationally uniform administration of employee benefit plans. See Egelhoff 532 U.S. at 148, 121 S.Ct. 1322; Travelers, 514 U.S. at 656-57, 115 S.Ct. 1671. Such uniformity is impossible if SUB plans are subject to different conditions in different states. Here, plan administrators would need to familiarize *305 themselves with Minnesota law so that they can determine when SUB plan payments may be made without negatively affecting- the participant’s eligibility for state unemployment benefits. See Egelhoff, 532 U.S. at 148-49, 121 S.Ct. 1322. Requiring SUB plan administrators to master the relevant laws of the various states would undermine the goal of Congress to “minimize the administrative and financial burden” on plan administrators. Ingersoll-Rand, 498 U.S. at 142, 111 S.Ct. 478. “The ‘tailoring of plans and employer conduct to the peculiarities of the law of each jurisdiction’ is exactly the burden ERISA seeks to eliminate.” Egelhoff, 532 U.S. at 151,121 S.Ct. 1322 (quoting Ingersoll-Rand, 498 U.S. at 142, 111 S.Ct. 478).
DEED and the dissent argue that the conditions set forth in subdivision 29(a)(13) do not come into effect until after the participant has received SUB plan payments, and therefore, the conditions do not affect SUB plans. It may be factually correct that the calculation of “wages” under the unemployment statutes and the determination of eligibility for state unemployment benefits are not resolved until after the SUB plan payments have been made. But the proper inquiry is whether the state law “relate[s] to” an ERISA-governed employee benefit plan. 29 U.S.C. § 1144(a). That inquiry does not depend on the temporal aspect of when the benefits are received. Instead, the inquiry focuses on whether plan administrators may need to restructure employee benefit plans to comply with the conditions of subdivision 29(a)(13). See Egelhoff, 532 U.S. at 147, 121 S.Ct. 1322. Here, if the state law is not preempted, plan administrators would need to change their SUB plans to achieve the objective of supplementing state unemployment benefits. Thus, the state law directly affects the substantive coverage and administration of SUB plans.
In sum, we hold that the timing provision in Minn.Stat. § 268.035, subd. 29(a)(13), which requires SUB plans to provide supplemental payments only for weeks that the plan participant was paid unemployment benefits In order for the supplemental payments to be excluded from the definition of “wages,” relates to the General Dynamics SUB plan, an employee benefit plan under ERISA. Specifically, the statutory condition has a connection with the substantive coverage and administration of the plan. Moreover, the condition effectively binds plan administrators to certain choices and interferes with the ERISA objectives of avoiding a multiplicity of regulation and permitting the nationally uniform administration of employee benefit plans.[6]
II.
Having concluded that the timing provision in MinmStat. § 268.035, subd. 29(a)(13), is connected with and thus “relate[s] to” the General Dynamics plan, an employee benefit plan described in 29 U.S.C. § 1003(a), the timing provision is preempted by ERISA unless the General Dynamics plan is exempt from ERISA coverage under 29 U.S.C. § 1003(b). 29 U.S.C. § 1144(a). DEED argues that the General Dynamics plan is exempt from ERISA coverage under 29 U.S.C. § 1003(b)(3) because the plan is main-, *306 tained solely for the purpose of complying with applicable unemployment compensation laws. Engfer counters that DEED failed to raise the exemption issue below, and therefore the issue is not properly before us. Engfer also argues that DEED’S argument lacks merit.
We first address whether to consider the exemption issue, because DEED did not raise this issue in the court of appeals. Although generally we will not consider an issue raised for the first time on appeal, State v. Sontoya, 788 N.W.2d 868, 874 (Minn.2010), we may review any “matter as the interest of justice may require,” Minn. R. Civ.App. P. 103.04. Further, we may base our decision upon a theory not previously presented or considered where the issue is “plainly decisive of the entire controversy on its merits” and where “there is no possible advantage or disadvantage to either party in not having had a prior ruling by the trial court on the question.” Watson v. United Servs. Auto. Ass’n, 566 N.W.2d 683, 687 (Minn.1997) (quoting Holen v. Minneapolis-St. Paul Metro. Airports Comm’n, 250 Minn. 130, 135, 84 N.W.2d 282, 286 (1957)).
Because resolving whether the General Dynamics plan is exempt from ERISA coverage under 29 U.S.C. § 1003(b) is clearly essential to our ERISA preemption analysis, we will resolve the issue. See 29 U.S.C. § 1144(a) (stating that a state law is preempted if it relates to “any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title” (emphasis added)); Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523 n. 20, 101 S.Ct. 1895, 68 L.Ed.2d 402 (1981) (“The only relevant state laws, or portions thereof, that survive [ERISA] preemption ... are those relating to plans that are themselves exempted from ERISA’s scope.”). Moreover, the parties have briefed the issue, and all of the relevant facts are before us.
The ERISA exemption provision sets forth certain types of employee benefit plans that are not covered by ERISA. 29 U.S.C. § 1003(b). It provides in relevant part:
The provisions of this subchapter shall not apply to any employee benefit plan if ... (3) such plan is maintained solely for the purpose of complying with applicable workmen’s compensation laws or unemployment compensation or disability insurance laws.
29 U.S.C. § 1003(b)(3).[7]
We conclude that the text of the ERISA exemption clause in section 1003(b)(3) is clear and unambiguous. Specifically, an employee benefit plan that is maintained solely for the purpose of complying with state unemployment compensation laws is not covered by ERISA.
In Shaw v. Delta Air Lines, Inc., the Supreme Court explained the meaning of the exemption in section 1003(b)(3). 463 U.S. 85, 107, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). The Shaw Court considered whether a New York disability benefits law, which required that employers pay sick-leave benefits to employees who were unable to work because of pregnancy, was preempted by ERISA. Id. As part of its analysis, the Court considered whether the employee benefit plans affected by the law were exempt from ERISA coverage under 29 U.S.C. § 1003(b)(3). Id. The Court concluded that to satisfy the exemption provision in section 1003(b)(3), the plan, as an *307 administrative unit, must provide “only those benefits required by the applicable state law.” Id. The Court reasoned that the use of the word “solely” in section 1003(b)(3) demonstrates that to be exempt from ERISA, the purpose of the entire plan must be to comply with the applicable state disability insurance law. Id. The Court concluded that the employer’s multi-benefit plan was not exempt from ERISA coverage because the plan was not a separately administered plan maintained solely to comply with New York disability law. Id. at 108,103 S.Ct. 2890.
The Shaw Court observed, however, that a state “may require an employer to maintain a disability plan complying with state law as a separate administrative unit.” Id. According to the Court, if a state “is not satisfied that the ERISA plan comports with the requirements of its disability insurance law, it may compel the employer to maintain a separate plan that does comply.” Id. But the state may not require employers to alter ERISA plans. Id. Moreover, employee benefit plans that not only provide benefits required by state disability insurance laws but also “more broadly serve employee needs as a result of collective bargaining” are not exempt under section 1003(b)(3). Id. at 107, 103 S.Ct. 2890 (quoting Alessi, 451 U.S. at 523 n. 20,101 S.Ct. 1895).
We conclude that the General Dynamics SUB plan, which is covered by Minn.Stat. § 268.035, subd. 29(a)(13), is not exempt from ERISA coverage under 29 U.S.C. § 1003(b)(3). The scope of the exemption clause under section 1003(b)(3) is limited to plans maintained solely to comply with applicable state workers’ compensation, unemployment compensation, or disability insurance laws. The phrase “maintained solely to comply with” applicable state laws means a plan that “provides only those benefits required” by the state laws. Shaw, 463 U.S. at 107, 103 S.Ct. 2890. Minnesota law, however, does not require employers to pay supplemental unemployment benefits. The General Dynamics SUB plan is designed and maintained to provide supplemental unemployment compensation benefits in excess of the benefits provided under state law. Therefore, the plan is not maintained solely for the purpose of complying with applicable unemployment compensation laws.[8]
DEED urges us to consider the context in which the ERISA exemption provision was enacted. Specifically, DEED notes that, unlike state disability insurance and workers’ compensation laws, no state requires employers to maintain private unemployment compensation benefit plans. Because SUB plans were regulated by the states at the time ERISA was enacted, DEED contends that Congress intended to carve out an exemption for SUB plans in section 1003(b)(3), as this is the only type of plan that an employer would maintain to comply with a state’s unemployment compensation laws.
We conclude that the language of section 1003(b)(3) is unambiguous, and therefore we need not .go beyond the text of the statute. When the words of a statute are unambiguous, judicial inquiry is complete. Bank One Chi., N.A. v. Midwest Bank & Trust Co., 516 U.S. 264, 279, 116 S.Ct. 637, 133 L.Ed.2d 635 (1996) (Scalia, J., concurring in part and concurring in judgment) (“[A] law means what its text most appropriately conveys, whatever the Congress that enacted it might have ‘intended.’ The law is what the law says, and we should content ourselves with reading it rather than psychoanalyzing those who enacted *308 it.”); Ratzlaf v. United States, 510 U.S. 135, 147-48, 114 S.Ct. 655,126 L.Ed.2d 615 (1994) (“[W]e do not resort to legislative history to cloud a statutory text that is clear.”); Rubin v. United States, 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). Regardless of the status of SUB plans at the time of ERISA’s enactment, ERISA is clear that such a plan must be maintained solely to comply with state unemployment compensation laws to be exempt under section 1003(b).
DEED next argues that SUB plans must comply with state unemployment compensation laws because an employee’s receipt of supplemental unemployment benefits is conditioned on the receipt of state unemployment benefits. DEED’S argument is unavailing. The inquiry under section 1003(b)(3) is not whether the SUB plan complies with state unemployment laws; instead, the inquiry is whether the supplemental plan is “maintained solely for the purpose of complying with” state unemployment laws. 29 U.S.C. § 1003(b)(3) (emphasis added). SUB plans like the General Dynamics plan are not maintained solely for the purpose of complying with applicable state unemployment laws. Therefore, the General Dynamics plan is not exempt from ERISA coverage under section 1003(b)(3), and in turn, based upon our analysis above, the conditions placed upon SUB plans by the state law do not survive ERISA preemption. See Alessi, 451 U.S. at 523 n. 20,101 S.Ct. 1895.
In sum, we conclude that ERISA preempts the timing provision in Minn. Stat. § 268.035, subd. 29(a)(13), relating to supplemental payments under a SUB plan because the provision “relate[s] to” an employee benefit plan under 29 U.S.C. § 1003(a), and the General Dynamics SUB plan is not maintained solely for the purpose of complying with applicable unemployment compensation laws under 29 U.S.C. § 1003(b)(3). Accordingly, the SUB plan payments Engfer received are not “wages” for purposes of his eligibility for state unemployment benefits, and he was not overpaid state unemployment benefits.
Affirmed.

. In the 2014 session, the Legislature amended Minn.Stat. § 268.035, subd. 29(a)(12), and renumbered the provision as subdivision 29(a)(13). Act of May 16, 2014, ch. 251, art. 1, § 1, 2014 Minn. Laws 841, 842. The amendment does not affect the issues presented here, other than to change the numbering of the subdivision. We therefore use the current subdivision numbering for section 268.035.

. "Wages” generally means "all compensation for employment, including commissions; bonuses, awards, and prizes; severance payments; standby pay; vacation and holiday pay; back pay as of the date of payment; tips and gratuities paid to an employee by a customer of an employer and accounted for by the employee to the employer; sickness and accident disability payments, except as otherwise provided in this subdivision; and the cash value of housing, utilities, meals, exchanges of services, and any other goods and services provided to compensate an employee.” Minn.Stat. § 268.035, subd. 29(a).

. The dissent argues that because the General Dynamics SUB plan is not part of the record, the court is unable to decide whether the plan is covered by ERISA. Because DEED concedes that the General Dynamics plan satisfies the definition of an “employee benefit plan” under ERISA, this argument fails.

. The dissent correctly points out that there is a presumption against preemption in areas of traditional state regulation. The Court, however, explained in Egelhoff that this presumption may be overcome when Congress has “made clear its desire for preemption.” 532 U.S. at 151, 121 S.Ct. 1322. The Court indicated that it has not "hesitated to find state ... law pre-empted when it conflicts with ERISA or relates to ERISA plans” when there is a connection between the state law and an ERISA plan. Id. We rely on that connection here too.

. The dissent maintains that the conditions set forth in Minn.Stat. § 268.035, subd. 29(a)(13), do not impose any requirements on SUB plans because plan administrators may choose to provide SUB benefits in compliance with state law or choose to ignore state law and provide benefits in any manner they wish. The dissent’s argument that plan administrators have a choice is not a choice at all. The dissent acknowledges that “the premise” of the General Dynamics SUB plan is that discharged employees will receive both state unemployment benefits and SUB plan payments. The dissent further acknowledges that federal law requires SUB plan payments to be linked to the receipt of state unemployment compensation. But when a SUB plan does not comply with state law, as here, plan participants delay or lose their eligibility for state unemployment benefits. Consequently, the supplemental payments are not in fact supplemental. Moreover, since payments under a SUB plan "dependf] on state benefits,”'as the dissent recognizes, any benefits provided under a nonconforming SUB plan are purely illusory. In short, the failure of the SUB plan to comply with state law eviscerates the very premise of the plan, as well as the benefits contemplated to be paid under the plan. Therefore, the effect of the Minnesota law on the General Dynamics SUB plan cannot reasonably be characterized as merely "incidental.”

. Because we conclude that the timing provision in Minn.Stat. § 268.035, subd. 29(a)(13), has a "connection with” an employee benefit plan, we need not consider whether the timing provision also makes "reference to” such a plan. N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995) (holding that a state láw that has a "connection with or reference to” an ERISA employee benefit plan is preempted by ERISA (emphasis added)).

. ERISA also exempts from its coverage government plans, church plans, and plans maintained outside the United States primarily for the benefit of nonresident aliens, or unfunded excess benefit plans. 29 U.S.C. § 1003(b)(l, 2), (4, 5). These exemptions are not applicable to the SUB plan at issue here.

. The dissent rightly concedes that the SUB plan at issue in this case is not exempt from ERISA coverage under 29 U.S.C. § 1003(b)(3).