**SUPERIOR GLASS, INC., Relator,**

v.

**Lucas JOHNSON, Respondent
(A16-1433),**

**Shawn Strang, Respondent (A16-1504),**

**Department of Employment and
Economic Development,
Respondent.**

A16-1433
A16-1504

Court of Appeals of Minnesota.

Filed May 1, 2017

Steven C. Overom, Christopher S. Davis, Jr., Maki & Overom, Ltd., Duluth, Minnesota (for relator).

Lucas Johnson, Wright, Minnesota (pro se respondent).

Shawn Strang, Cloquet, Minnesota (pro se respondent).

Lee B. Nelson, Keri A. Phillips, Department of Employment and Economic Devel-

opment, St. Paul, Minnesota (for respondent department).

Considered and decided by Kirk, Presiding Judge; Schellhas, Judge; and Bratvold, Judge.

## OPINION

SCHELLHAS, Judge

In this consolidated certiorari appeal, relator argues that unemployment-law judges (1) erred in determining that its employees are eligible for unemployment-insurance benefit accounts in Minnesota, and (2) applied Minn. Stat. § 268.035, subd. 12(a), to result in double taxation of relator in violation of the Dormant Commerce Clause. We affirm.

## FACTS

Relator Superior Glass Inc. is a Wisconsin company with company headquarters in Superior, Wisconsin. Respondent-employees Lucas Johnson and Shawn Strang performed work for Superior Glass in both Minnesota and Wisconsin during 2015 and 2016, but Superior Glass laid them off for a period of time in 2016. Both employees applied for unemployment-insurance benefits with respondent Minnesota Department of Employment and Economic Development (DEED) because they lived in Minnesota.

The employees earned wages during 2015 and 2016, and in support of their benefits applications, provided DEED with detailed logs of hours worked, broken down by day and by job. Based on that information, DEED determined how many hours each employee had worked in Minnesota and established base periods for

the determination of benefits. *See* Minn. Stat. § 268.035, subd. 4 (2016) (defining "base period" and explaining how to determine base period). DEED determined that both employees were eligible to receive unemployment-insurance benefits because both worked more than 50% of their hours in Minnesota during certain calendar quarters in the base periods and therefore performed their employment primarily in Minnesota during those quarters. DEED further determined that, for the quarters during which Johnson and Strang performed their employment primarily in Minnesota, their entire employment with Superior Glass was "covered employment," as defined in Minn. Stat. § 268.035, subd. 12(a)(1)(i).[1] As to each employee, DEED notified Superior Glass that "[u]nder Minnesota Statute section 268.047, subd. 1, any unemployment benefits paid will be used in computing the future unemployment tax rate of SUPERIOR GLASS."

Superior Glass appealed DEED's determinations of eligibility. Unemployment-law judges (ULJs) conducted telephone hearings, affirmed DEED's determinations, and affirmed their decisions after reconsideration. This consolidated certiorari appeal follows.

## ISSUES

I. Did the ULJs err in determining that the employees' entire employment during calendar quarters in which the employees performed work primarily in Minnesota was "covered employment," as defined in Minn. Stat. § 268.035, subd. 12(a)(1)(i)?

II. Does the ULJs' application of Minn. Stat. § 268.035, subd. 12(a), subject

---

1. Johnson earned wages for work performed primarily in Minnesota during the first, second, and fourth quarters of 2015 and the first quarter of 2016. Strang earned wages for work performed primarily in Minnesota during the second, third, and fourth quarters of 2015.

Superior Glass to double taxation in violation of the Dormant Commerce Clause?

## ANALYSIS

### I

Superior Glass does not contest the ULJs' findings that Johnson and Strang worked more than 50% of their hours in Minnesota during certain calendar quarters. Rather, Superior Glass argues that the ULJs misinterpreted "covered employment," as defined in Minn. Stat. § 268.035, subd. 12(a), and therefore erred in determining that Johnson and Strang were eligible for unemployment-insurance benefit accounts in Minnesota.

■ We may affirm the ULJs' decisions or remand the cases for further proceedings, or we may reverse or modify the decisions if the substantial rights of a relator may have been prejudiced because the decisions are, among other things, "in violation of constitutional provisions" or "in excess of the statutory authority or jurisdiction of the department." Minn. Stat. § 268.105, subd. 7(d)(1), (2) (2016). We are not bound by the ULJs' conclusions of law but are free to exercise our independent judgment. *Markel v. City of Circle Pines*, 479 N.W.2d 382, 384 (Minn. 1992).

These consolidated appeals require us to interpret Minn. Stat. § 268.035, subd. 12(a). "Statutory interpretation is a question of law that [appellate courts] review de novo." *Engfer v. Gen. Dynamics Advanced Info. Sys., Inc.*, 869 N.W.2d 295, 300 (Minn. 2015). "[The] goal in interpreting a state statute is to ascertain and effectuate the intent of the Legislature." *Id.* (citing Minn. Stat. § 645.16 (2014)).

The supreme court has noted that "the unemployment compensation statute is remedial in nature and must be liberally construed to effectuate the public policy set out in Minn. Stat. § 268.03, which

states that the unemployment benefits provisions are to be used for the benefit of persons unemployed through no fault of their own." *Jenkins v. Am. Express Fin. Corp.*, 721 N.W.2d 286, 289 (Minn. 2006). "Unemployment benefits are paid from state funds and are not considered . . . as paid by an employer." Minn. Stat. § 268.069, subd. 2 (2016). "Unemployment insurance taxes . . . accrue and become payable by each employer for each calendar year on the taxable wages that the employer paid to employees in *covered employment* . . . ." Minn. Stat. § 268.051, subd. 1(a) (2016) (emphasis added); *see also* Minn. Stat. § 268.035, subd. 23(a) (explaining the method the commissioner must use to "calculate the state's average annual wage and the state's average weekly wage"), (b) ("For purposes of calculating the amount of taxable wages, the state's average annual wage applies to the calendar year following the calculation.") (2016).

■ Minnesota Statutes section 268.035, subdivision 12(a), defines "covered employment." The portion of the statute pertinent to this case provides that:

(a) "Covered employment" means the following unless excluded as "noncovered employment" under subdivision 20:

(1) an employee's entire employment during the calendar quarter if:

(i) the employment during the quarter is performed *primarily* in Minnesota;

Minn. Stat. § 268.035, subd. 12(a)(1)(i) (emphasis added). In its reply brief, Superior Glass suggests that the statute is ambiguous based on information on DEED's website. But Superior Glass did not argue ambiguity in its principal brief. Generally, issues not raised in an appealing party's principal brief cannot be raised in a reply brief and may be considered forfeited. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn. 2010). In any

event, we agree with DEED that the statute is not ambiguous.

■ "Statutory language is ambiguous only if, as applied to the facts of the particular case, it is susceptible to more than one reasonable interpretation." *Engfer*, 869 N.W.2d at 300. "If the statutory language is unambiguous, [appellate courts] must enforce the plain meaning of the statute and not explore the spirit or purpose of the law." *Id.* "[Appellate courts] give words and phrases their plain and ordinary meaning." *Id.* Minnesota Statutes section 268.035 does not define the word "primarily." "To determine the plain meaning of a word, [appellate courts] often consider dictionary definitions." *Shire v. Rosemount, Inc.*, 875 N.W.2d 289, 292 (Minn. 2016). The dictionary defines "primarily" as "[c]hiefly; mainly" or "at first; originally." *The American Heritage Dictionary of the English Language* 1393 (4th ed. 2006). One definition refers to quantity and the other focuses on the sequence of events.

Reading "primarily" in the context of Minn. Stat. § 268.035, subd. 12(a)(1)(i), we conclude that the only reasonable interpretation of "primarily" is "[c]hiefly; mainly" because the context of Minn. Stat. § 268.035, subd. 12(a)(1)(i), suggests a quantitative, not sequential, meaning. *See Cocchiarella v. Driggs*, 884 N.W.2d 621, 625 (Minn. 2016) ("When a word has a variety of meanings, [appellate courts] examine the context in which the word appears."). We further conclude that, as applied to the facts of this case, "primarily" is not susceptible to more than one reasonable interpretation.

■ Applying the unambiguous quantitative meaning of "primarily"—chiefly or mainly, we conclude that an employee's entire employment during the calendar quarter is "covered employment" under Minn. Stat. § 268.035, subd. 12(a)(1)(i), if the employment is performed chiefly or mainly in Minnesota. Because Johnson and Strang performed more than 50% of their employment in Minnesota during certain calendar quarters, they performed their employment chiefly or mainly in Minnesota during those quarters. The ULJs therefore properly determined that Johnson and Strang performed their employment primarily in Minnesota during the subject quarters.

Superior Glass nevertheless argues that Johnson's and Strang's employment cannot be "covered employment" because Minnesota's statutory definition of "covered employment" must be read alongside "Localization of Work Provisions" that are attached to a 2004 Unemployment Insurance Program Letter from the U.S. Department of Labor to state workforce agencies (localization provisions). *See* U.S. DEPT. OF LABOR, Unemployment Insurance Program Letter No. 20-04 (May 10, 2004), https://wdr.doleta.gov/directives/attach/UIPL20-04.cfm. Superior Glass also argues that information on DEED's website should be read together with the localization provisions because "the language in the statute ... can be traced back [to] the Federal Localization of Work Provisions." Indeed, DEED's website reflects a previous version of Minn. Stat. § 268.035, subd. 12(a)(1), as follows:

When an employee performs services in Minnesota and at least one other state, use the following information to determine whether wages paid to the worker must be reported to the Minnesota Unemployment Insurance (UI) Program.

● The employment is performed primarily in Minnesota, and the employment performed outside Minnesota is incidental to the employment in Minnesota.

MINNESOTA DEPARTMENT OF EMPLOYMENT AND ECONOMIC DEVELOPMENT, *Covered/noncov-*

*ered employment: Employment in more than one state*, http://uimn.org/employers/help-and-support/emp-hbook/employment-in-more.jsp (last visited Apr. 20, 2017).

■ Prior to August 1, 2014, section 268.035, subdivision 12, defined "covered employment" to include:

> (1) an employee's entire employment during the calendar quarter if: ·
> (i) the employment is performed *entirely* in Minnesota; [or]
> (ii) the employment is performed primarily in Minnesota, *and the employment performed outside Minnesota is incidental to the employment in Minnesota*[.]

Minn. Stat. § 268.035, subd. 12 (2012) (emphases added). Effective August 1, 2014, the legislature removed clause (1)(i) from the statute and removed from clause (1)(ii) the phrase, "and the employment performed outside Minnesota is incidental to the employment in Minnesota." Minn. Stat. § 268.035, subd. 12(a)(1) (2014); *see also* 2014 Minn. Laws ch. 251, art. 2, § 4, at 852 – 53. We presume that the legislative amendment shows the legislature's intent to change existing law. *See Honeymead Prods. Co. v. Aetna Cas. & Sur. Co.*, 270 Minn. 147, 150, 132 N.W.2d 741, 743 (1965) ("The adoption of an amendment raises a presumption that the legislature intended to make some change in the existing law." (quotation omitted)). Contrary to Superior Glass's argument, the amendment to the statute reflects the legislature's intent that we need not interpret Minn. Stat. § 268.035, subd. 12(a)(1), together with the localization provisions. The fact that DEED's website has not been updated to reflect the current version of the statute does not require us to disregard the legislature's intent.

Moreover, the localization provisions explicitly state that "[a]mendments to state law are *not required for conformity pur-* *poses.*" Unemployment Insurance Program Letter No. 20-04, *supra* (emphasis added). The only action requested by this advisory document, which does not have the force of law, is for state administrators to provide copies of the letter and attachments to appropriate staff. *Id.* Because the localization provisions are not binding on this court, we reject Superior Glass's argument that we must interpret Minn. Stat. § 268.035, subd. 12(a)(1)(i), together with those provisions.

Finally, Superior Glass argues that the plain language of Minn. Stat. § 268.035, subd. 12(a), requires us to consider subparagraph (2) because subparagraphs (1), (2), (3), and (4), are conjoined by "and." Superior Glass is correct that the inclusion of the word "and" between subparagraphs (3) and (4) of subdivision 12(a) implies the inclusion of "and" between each of the subparagraphs, (1)-(4). *See J.D. Donovan, Inc. v. Minnesota Dep't of Transp.*, 878 N.W.2d 1, 13 (Minn. 2016) ("The word 'and' is one of inclusion, not exclusion."). But this implication does not support Superior Glass's reading of the statute because the use of "and" signifies the legislature's intent that employment satisfying any one of the criteria described in subdivision 12(a) constitutes "covered employment."

## II

■ Superior Glass argues that Minn. Stat. § 268.035, subd. 12(a)(1)(i), discriminates against interstate commerce in favor of intrastate commerce and therefore, as applied to Superior Glass, subjects Superior Glass to double taxation in violation of the Dormant Commerce Clause. We presume that a statute is constitutional by "invok[ing] every presumption in favor of constitutionality." *Schober v. Comm'r of Revenue*, 778 N.W.2d 289, 293 (Minn. 2010). "[A] statute will not be declared

unconstitutional unless the party challenging it demonstrates beyond a reasonable doubt that the statute violates some constitutional provision." *Id.* (quotation omitted). "This court will exercise its power to declare a statute unconstitutional only with extreme caution and when absolutely necessary." *Haugen v. Superior Dev., Inc.*, 819 N.W.2d 715, 721 (Minn. App. 2012) (citing *Walker v. Zuehlke*, 642 N.W.2d 745, 750 (Minn. 2002)).

 The Commerce Clause provides that "Congress shall have [the] Power ... [t]o regulate Commerce with foreign [n]ations and among the several States." U.S. Const. art. I, § 8, cl. 3. "Although the Commerce Clause refers to an affirmative grant of power to Congress, it has long been interpreted to contain an implied negative command, called the Dormant Commerce Clause, that states may not unduly burden or discriminate against interstate commerce." *Matter of Griepentrog*, 888 N.W.2d 478, 494 (Minn. App. 2016) (citing *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 832 (Minn. 2002)). "The constraint of the Dormant Commerce Clause reflects concerns over economic protectionism: regulatory measures that are designed to benefit in-state economic interests by burdening out-of-state competition." *Id.* ' "By prohibiting States from discriminating against or imposing excessive burdens on interstate commerce without congressional approval, it strikes at one of the chief evils that led to the adoption of the Constitution, namely, state tariffs and other laws that burdened interstate commerce." ' *Id.* (quoting *Comptroller of Treasury v. Wynne*, —— U.S. ——, 135 S.Ct. 1787, 1794, 191 L.Ed.2d 813 (2015)).

 "[I]n evaluating a Commerce Clause challenge, this court engages in a two-step analysis." *Id.* "First, we determine 'whether the challenged statute implicates the Commerce Clause." ' *Id.* (quoting *Chapman*, 651 N.W.2d at 832). "If it does, we then evaluate whether the statute violates the Commerce Clause." *Id.* (quotation omitted). "This involves determining whether the challenged law discriminates against interstate commerce or excessively burdens interstate commerce." *Id.* (citing *Swanson v. Integrity Advance, LLC*, 870 N.W.2d 90, 94 (Minn. 2015)). "If it discriminates against interstate commerce, it is not valid unless it furthers a legitimate local purpose that cannot be adequately served by reasonable alternatives that are nondiscriminatory." *Id.*

 "[A] statute may implicate interstate commerce if it affects out-of-state economic interests that may wish to conduct in-state operations." *Id.* at 495. Here, interstate commerce is implicated by Minn. Stat. § 268.035, subd. 12(a)(1)(i), because the statute defines "covered employment" to include employment performed chiefly or mainly in Minnesota but also performed, to a lesser extent, outside Minnesota. The statute thereby has the potential to affect companies located outside of Minnesota who wish to conduct business within Minnesota.

 "Even if a [state statute] implicates interstate commerce, however, in order to be held invalid under the Dormant Commerce Clause, it must also discriminate against or excessively burden interstate commerce." *Id.* at 496. "A statute discriminates against interstate commerce if it accords 'differential treatment [to] in-state and out-of-state economic interests that benefits the former and burdens the latter.' " *Id.* (quoting *Or. Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 99, 114 S.Ct. 1345, 1350, 128 L.Ed.2d 13 (1994). "This discrimination may occur in one of three ways: either the statute is facially discriminatory, it has a discrimina-

tory intent, or it has an effect of unduly burdening interstate commerce." *Id.* at 496 (citing *Mayo Collaborative Servs., Inc. v. Comm'r of Revenue*, 698 N.W.2d 408, 412 (Minn. 2005)).

 Superior Glass appears to argue that Minn. Stat. § 268.035, subd. 12(a)(1)(i), has the effect of unduly burdening interstate commerce. Relying on *Wynne*, Superior Glass argues that the statute violates the Dormant Commerce Clause because "it has created exactly the scenario in which commerce conducted in multiple states will be subject to double taxation." But *Wynne* does not support Superior Glass's argument because it is factually distinguishable. In *Wynne*, the Supreme Court held that a feature of Maryland's personal income tax scheme denying residents a full credit against income taxes paid to other states violated the Dormant Commerce Clause because it "create[d] an incentive for taxpayers to opt for intrastate rather than interstate economic activity." 135 S.Ct. at 1792.

Maryland's income tax scheme consisted of two parts: "a 'state' income tax ... and a so-called 'county' income tax." *Id.* Maryland residents who paid income tax to another jurisdiction for income earned there could receive a credit against the Maryland "state" tax on such income, but not against the "county" tax on such income. *Id.* Maryland also taxed the income of nonresidents earned from within Maryland, requiring them to pay both the "state" tax and "a 'special nonresident tax' in lieu of the 'county' tax." *Id.*

The Wynnes claimed an income tax credit for income taxes paid to other states. *Id.* at 1793. In accordance with Maryland law, "the Comptroller allowed the Wynnes a credit against their Maryland 'state' income tax but not against their 'county' income tax." *Id.* The Circuit Court for Howard County reversed, con-

cluding that "Maryland's tax system violated the Commerce Clause." *Id.* The Maryland Court of Appeals affirmed, evaluating the tax under a four-part test, which required the court to determine "whether a tax is applied to an activity with a substantial nexus with the taxing State, is fairly apportioned, does not discriminate against interstate commerce, and is fairly related to the services provided by the State." *Id.* (quotation omitted). According to the court of appeals, the Maryland "tax failed both the fair apportionment and nondiscrimination parts of the [four-part] test." *Id.*

The Supreme Court affirmed, holding that Maryland's personal income tax scheme violated the Dormant Commerce Clause. *Id.* at 1805, 1807. The Court explained that the internal consistency test "helps courts identify tax schemes that discriminate against interstate commerce" by "look[ing] to the structure of the tax at issue to see whether its identical application by every State in the Union would place interstate commerce at a disadvantage as compared with commerce intrastate." *Id.* at 1802 (quotation omitted). "By hypothetically assuming that every State has the same tax structure, the internal consistency test allows courts to isolate the effect of a defendant State's tax scheme." *Id.* The test

allows courts to distinguish between (1) tax schemes that inherently discriminate against interstate commerce without regard to the tax policies of other States, and (2) tax schemes that create disparate incentives to engage in interstate commerce (and sometimes result in double taxation) only as a result of the interaction of two different but nondiscriminatory and internally consistent schemes. The first category of taxes is typically unconstitutional; the second is not.

*Id.* (footnote and citations omitted). "Tax schemes that fail the internal consistency test will fall into the first category, not the second. . . ." *Id.* "Any cross-border tax disadvantage that remains after application of the test cannot be due to tax disparities but is instead attributable to the taxing State's discriminatory policies alone." *Id.* (footnote and quotation omitted).

Superior Glass's Dormant Commerce Clause argument fails because Minn. Stat. § 268.035, subd. 12(a)(1)(i), passes the internal consistency test articulated in *Wynne*. If every state had Minnesota's unemployment tax scheme—defining "covered employment" as in Minn. Stat. § 268.035, subd. 12(a)(1)(i)—employment that is performed partly in state and partly out of state would be "covered employment" subject to unemployment tax only in the state in which the employment is primarily performed during that calendar quarter. Employment therefore would not be taxed in more than one state during any calendar quarter because it is only possible for employment to be performed "primarily" in one state during any calendar quarter. Unlike the statute at issue in *Wynne*, the Minnesota statute does not inherently discriminate against interstate commerce without regard to the tax schemes of other states.

Even if Superior Glass is subject to double taxation in this case due to the application of unemployment-insurance laws in both Minnesota and Wisconsin, double taxation is not per se unconstitutional because the supreme court has held that "neither state nor federal constitutional law forbids double taxation." *Comm'r of Revenue v. Richardson*, 302 N.W.2d 23, 27 (Minn. 1981) (stating that even if relator were subject to double taxation, double taxation does not necessarily violate the constitution); *see also Estate of Renick v. United States*, 687 F.2d 371, 374 (Ct. Cl. 1982) ("It is well established that double taxation is not unconstitutional per se."); *cf. Hellmich v. Hellman*, 276 U.S. 233, 238, 48 S.Ct. 244, 246, 72 L.Ed. 544 (1928) ("When, as here, Congress has clearly expressed its intention, the statute must be sustained even though double taxation results.").

## DECISION

The ULJs did not err in determining that Johnson and Strang are eligible for benefit accounts in Minnesota because their employment with Superior Glass included "covered employment" within the meaning of Minn. Stat. § 268.035, subd. 12(a)(1)(i), which does not subject Superior Glass to double taxation in violation of the Dormant Commerce Clause.

**Affirmed.**