Susan E. Gaertner, Amanda M. Sicoli, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, Minnesota (for relator)
Lee B. Nelson, Eli K. Best, Anne B. Froelich, Department of Employment and Economic Development, St. Paul, Minnesota (for respondent)
Considered and decided by Rodenberg, Presiding Judge; Bjorkman, Judge; and Smith, John, Judge.
Smith, John, Judge* *502 We affirm the determination of the unemployment-law judge (ULJ) that relator is obligated to pay unemployment-insurance taxes on the wages it pays to its H-2A- and J-1-visa-holding employees because those wages are wages earned in covered agricultural employment.
FACTS
Since 2010, appellant Svihel Vegetable Farm, Inc. has employed H-2A- and J-1-visa-holders (collectively "visa employees") on its farm. It has never paid unemployment-insurance taxes on the wages it pays to its visa employees. In 2016, DEED audited Svihel's records and concluded that Svihel owed $154,726 in unemployment-insurance taxes on those wages. Svihel appealed. After a hearing, a ULJ ruled that, because the visa employees performed "covered employment" not exempt from taxation, their wages were subject to taxation. Svihel requested reconsideration, and the ULJ affirmed. Svihel then petitioned this court for certiorari.
ISSUES
I. Does the exclusion of agricultural labor performed by visa employees from the federal definition of employment exclude that labor from being agricultural employment subject to unemployment-insurance taxation under Minnesota law?
II. Does the evidence in the record reasonably tend to support the ULJ's conclusion that the J-1 employees did not meet the educational-employment exception to covered employment?
ANALYSIS
I. The visa employees performed agricultural employment subject to unemployment-insurance taxation under Minnesota law.
Svihel requests reversal of the ULJ's decision, arguing that the decision was based on an erroneous interpretation of Minn. Stat. § 268.035, subds. 2, 11. We may reverse or modify a ULJ's decision when it is affected by an error of law. Minn. Stat. § 268.105, subd. 7(d)(4) (Supp. 2017). We review a ULJ's legal conclusions de novo. See Wilson v. Mortg. Res. Ctr., Inc. , 888 N.W.2d 452, 460 (Minn. 2016). We address only the arguments made by the parties in their briefs and arguments. See Peterson v. BASF Corp., 711 N.W.2d 470, 482 (Minn. 2006).
We begin with the Minnesota statutory framework. "Unemployment insurance taxes accrue and become payable by each employer for each calendar year on the taxable wages that the employer paid to employees in covered employment...." Minn. Stat. § 268.051, subd. 1(a) (Supp. 2017). Taxable wages include "wages paid to an employee in covered employment."
*503 Minn. Stat. § 268.035, subd. 24(a). Covered employment includes "covered agricultural employment." Id. , subd. 12(b) (2016). Covered agricultural employment includes "agricultural employment," provided that certain other conditions not relevant to this appeal are met. Id. , subd. 11(a). Finally, and most importantly, agricultural employment means "the same as 'agricultural labor' defined under United States Code, title 26, section 3306, subparagraph (k), of the Federal Unemployment Tax Act and Code of Federal Regulations, title 26, section 31.3121 (G)-1." Id. , subd. 2(a).
Turning next to the federal statute, agricultural labor is defined in title 26, section 3306, subparagraph (k), as having "the meaning assigned to such term by subsection (g) of section 3121," with an exception not relevant here. 26 U.S.C. § 3306(k) (2012). That assigned meaning includes "all services performed ... on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity." Id. § 3121(g)(1).
Finally, before proceeding to Svihel's arguments, we turn to the applicable federal regulations. The pertinent section of the Code of Federal Regulations defines agricultural labor as "services of the character described in paragraph (b), (c), (d), (e), and (f) of this section." 26 C.F.R. § 31.3121(g)-1(a)(1) (2017). As relevant here, those services include "[t]he raising or harvesting of any ... agricultural or horticultural commodity." Id. § 31.3121(g)-1(b)(1)(iii). The definition also directs readers to section 31.3121(b)(1)-1 for "provisions relating to the exception from employment provided with respect to services performed by certain foreign agricultural workers." Id. § 31.3121(g)-1(a)(3). That section indicates "[s]ervices performed after 1956 by a foreign agricultural worker lawfully admitted to the United States from any foreign country or possession thereof ... on a temporary basis to perform agricultural labor are excepted from employment." Id. § 31.3121(b)(1)-1(c).
With this statutory framework in mind, we turn to whether visa employees' wages are subject to unemployment-insurance taxation under Minnesota law. Our analysis begins, as it must, with the statutes' plain language. See STRIB IV, LLC v. Cty. of Hennepin , 886 N.W.2d 821, 824 (Minn. 2016). We determine "whether the plain language of the statute clearly and unambiguously requires a particular result." Id. (quotation omitted). If the language is "clear and free from all ambiguity," this is also the end of the inquiry, and we simply apply the letter of the law. Minn. Stat. § 645.16 (2016).
At issue is whether the cultivating of strawberries, cabbages, tomatoes, peppers, and melons ceases to be agricultural labor when performed by visa employees. The Minnesota legislature has indicated that agricultural employment is synonymous with "agricultural labor" as defined in two sections of federal law, specifically 26 U.S.C. § 3306(k) and 26 C.F.R. § 31.3121(g)-1. Looking at those sections, section 3306(k) points us to section 3121(g), which defines agricultural labor as services performed, in the employ of any person, on a farm. Section 31.3121(g)-1 similarly defines agricultural labor as services performed on a farm by an employee of any person in connection with the raising or harvesting of any agricultural or horticultural commodity. These definitions unambiguously include the services Svihel's visa employees were performing, to wit, cultivating crops. Applying this unambiguous "letter of the law," we conclude that the visa employees engaged in agricultural labor, and thus agricultural employment, under Minnesota's unemployment-insurance taxation laws.
*504 Svihel argues that this should not be the end of the analysis. In its view, sections 3306 and 31.3121(g)-1 must be read alongside the rest of the acts from which they originate, and those acts exclude visa employees' labor from the definition of employment. See 26 U.S.C. § 3306(c)(1)(B) (2012) ; 26 U.S.C. § 3121(b)(1) (2012). We disagree. We find it instructive that the Minnesota legislature chose to reference specific sections of the United States Code and Code of Federal Regulations in defining agricultural labor, not the entire chapter in which those sections are contained.[1] Cf. Tucker v. Newman , 217 Minn. 473, 478-80, 14 N.W.2d 767, 771 (1944) (considering one specific section of the federal Social Security Act to determine the meaning of "agricultural labor," even when the Minnesota Employment and Security Act was based on the entire act). This indicates we are to look only to those sections, and not other, unmentioned sections, in determining the legislature's intended meaning of agricultural labor.
Svihel also argues that section 31.3121(g)-1"explicitly" excludes visa employees from employment, because it directs readers to section 31.3121(b)(1)-1 (which exempts the services performed by visa employees from the definition of employment). We are unpersuaded. First, section 31.3121(g)-1 refers to the types of services that constitute agricultural labor, not the types of people whose wages are subject to unemployment-insurance taxation. Section 31.3121(g)-1 does not say that, because visa employees fall within the exclusionary scope of section 31.3121(b)(1)-1, visa employees' services cease to be agricultural labor. Rather, it merely defines what agricultural labor is, and then notes that some agricultural labor will not constitute employment for federal taxation purposes.
Second, our interpretation is confirmed by the fact that the exclusionary language itself indicates that visa employees are still engaging in agricultural labor. Section 31.3121(b)(1)-1(c) indicates services "performed ... by a foreign agricultural worker lawfully admitted to the United States from any foreign country or possession thereof ... on a temporary basis to perform agricultural labor are excepted from employment." (emphasis added). Notably, the same clause in this section that excludes visa employees' labor from the definition of employment nevertheless refers to that labor as agricultural labor. This indicates that excluding certain labor from being "employment" has no impact on whether that labor is nevertheless "agricultural labor," the term referenced by the Minnesota Legislature.
II. The evidence in the record reasonably tends to support the ULJ's conclusion that the J-1 employees did not meet the educational-employment exception to covered employment.
Svihel argues that, even if its visa employees were engaging in agricultural employment, the ULJ erred by concluding that Svihel's J-1 employees were not exempt from unemployment-insurance taxation because they were subject to an exception from covered employment. The parties agree on the meaning of the exception in question, but disagree on whether the ULJ's decision was supported by the record. The resolution of this issue thus turns on a factual dispute. "[W]e review the ULJ's findings of fact in the light most favorable to the decision and will not disturb *505 those findings as long as there is evidence in the record that reasonably tends to sustain them." Wilson , 888 N.W.2d at 460 (quotations omitted).
Some types of employment in Minnesota are "noncovered employment" and not subject to unemployment-insurance-program taxation. Minn. Stat. § 268.035, subd. 12(a). One such type of employment is:
[E]mployment of an individual who is enrolled as a student in a full-time program at a nonprofit or public educational institution that maintains a regular faculty and curriculum and has a regularly organized body of students in attendance at the place where its educational activities are carried on, taken for credit at the institution, that combines academic instruction with work experience, if the employment is an integral part of the program, and the institution has so certified to the employer , except that this clause does not apply to employment in a program established for or on behalf of an employer or group of employers[.]
Id. , subd. 20(21) (Supp. 2017) (emphasis added).
The ULJ concluded that "[n]othing in that subdivision applies to these J-1 workers." We agree. Although there was some testimony that J-1 employees come to the United States "to learn about the business and ... skills they can take back home to their country," there was no evidence that any educational institution ever certified the requisite facts to Svihel that would make this exception applicable. Given this lack of evidence, the ULJ did not err in concluding that the exception was not met.
DECISION
Because federal law's exclusion of visa employees' labor from the federal definition of employment does not cause that labor to cease being agricultural employment under state law, and because the evidence in the record reasonably tends to support the conclusion that the J-1 employees' employment was not subject to the educational-employment exception to covered employment, the ULJ did not err by concluding that appellant was liable for unemployment-insurance taxes on its visa employees' wages. We therefore affirm the ULJ's decision.
Affirmed.

Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

Section 3306 is part of the Federal Unemployment Tax Act. 26 U.S.C. ch. 23. Section 31-3121(g)-1 is a regulation interpreting the Federal Insurance Contributions Act. 26 U.S.C. ch. 21.