GILDEA, Chief Justice.
The question presented in this case is whether appellant Svihel Vegetable Farm, Inc. must pay unemployment-insurance taxes on the wages it paid to workers who hold H-2A and J-1 visas. The Minnesota Department of Employment and Economic Development determined that the wages Svihel Farm pays to these workers are subject to unemployment-insurance taxation. An unemployment-law judge agreed with the Department's determination, and the court of appeals affirmed. We granted Svihel Farm's petition for review. Because the court of appeals correctly concluded that Svihel Farm owes the taxes, we affirm.
*393 FACTS
Svihel Farm grows and sells fruits and vegetables. In 2010, the farm began hiring H-2A and J-1 nonimmigrant visa holders (collectively, visa workers).[1] H-2A and J-1 visas are temporary nonimmigrant visas issued to foreign nationals who have sponsors in the United States that allow the foreign nationals to engage in certain types of work, and in the case of J-1 visa workers, certain other activities.[2] Richard D. Steel, Steel on Immigration Law §§ 3:15, 3:18 (2018-2019 ed. 2018). The visa workers Svihel Farm sponsors help with planting and harvesting crops as well as selling products at farmers' markets.
In 2016, the Department of Employment and Economic Development (DEED) conducted an audit of Svihel Farm's records and determined that the farm owed $ 154,726 in unpaid unemployment-insurance taxes, mostly on the wages of the H-2A and J-1 visa workers that the Farm employed from 2012 to 2015.[3] Svihel Farm appealed DEED's determination, contending that the visa workers' wages are not subject to unemployment-insurance taxation under Minnesota law. An unemployment-law judge conducted a hearing in March and April 2017 and ruled in favor of DEED.
Svihel Farm appealed to the court of appeals, and that court affirmed the decision of the unemployment-law judge. Svihel Vegetable Farm, Inc. v. Dep't of Emp't & Econ. Dev. , 915 N.W.2d 501, 502 (Minn. App. 2018). Specifically, the court of appeals concluded that, because the visa workers performed "agricultural labor" under the relevant federal laws, their work fell within the Minnesota unemployment-insurance tax statute's definition of "agricultural employment." Id. at 503. Accordingly, the court of appeals held that Svihel *394 Farm must pay unemployment-insurance taxes on the wages Svihel Farm paid to its visa workers. Id. at 505. We granted Svihel Farm's petition for review.
ANALYSIS
On appeal, Svihel Farm argues that the court of appeals erroneously interpreted state and federal statutes that govern the payment of unemployment-insurance taxes. Statutory interpretation presents a question of law that we review de novo. Engfer v. Gen. Dynamics Advanced Info. Sys., Inc. , 869 N.W.2d 295, 300 (Minn. 2015). The goal of statutory interpretation "is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2018).[4]
Before turning to the specifics of the parties' arguments, we begin with a discussion of the provisions in state and federal law that are at issue in this case. Federal law is relevant because Minnesota statutes governing unemployment-insurance taxes incorporate provisions of federal law.
Beginning with state law, Minn. Stat. § 268.051, subd. 1(a) (2018), provides that "[u]nemployment insurance taxes accrue and become payable by each employer for each calendar year on the taxable wages that the employer paid to employees in covered employment " with certain exceptions not applicable here. (Emphases added). Two terms with statutory definitions in section 268.051, subdivision 1(a) are relevant to this case: "taxable wages" and "covered employment." Minnesota Statutes § 268.035 (2018) contains the relevant definitions. "Taxable wages " are defined as "those wages paid to an employee in covered employment ...." Minn. Stat. § 268.035, subd. 24(a) (emphases added). The definition of "covered employment" is more complicated.
Minnesota Statutes § 268.035, subd. 12(a), states that "[c]overed employment" includes certain listed forms of employment, unless that form of employment is specifically excluded as "noncovered employment" under section 268.035, subdivision 20. And, as relevant here, "covered employment" includes "covered agricultural employment under subdivision 11." Id. , subd. 12(b). Subdivision 11, in turn, defines "[c]overed agricultural employment" as "agricultural employment performed for a person who" meets criteria that are undisputedly met in this case.[5] Id. , subd. 11(a) (emphasis added). Finally, the Minnesota unemployment-insurance tax statute provides that " '[a]gricultural employment' means the same as 'agricultural labor ' defined *395 under United States Code, title 26, section 3306, subparagraph (k), of the Federal Unemployment Tax Act and Code of Federal Regulations, title 26, section 31.3121 (g)-1." Id. , subd. 2(a) (emphasis added).[6]
In other words, under Minnesota's unemployment-insurance tax statute, "agricultural employment" is subject to taxation if it is "agricultural labor," and whether work amounts to "agricultural labor" is determined by applying the definitions in 26 U.S.C. § 3306(k) and 26 C.F.R. § 31.3121(g)-1. We turn to those federal provisions next.
Section 3306 is part of the Federal Unemployment Tax Act (FUTA) and does not directly define the term "agricultural labor." But section 3306 references the meaning assigned to "agricultural labor" in a provision of the Federal Insurance Contributions Act (FICA). Specifically, section 3306, subsection (k) provides that, "[f]or the purposes of this chapter, the term 'agricultural labor ' has the meaning assigned to such term by subsection (g) of section 3121," with an exception not applicable in this case. 26 U.S.C. § 3306(k) (2012) (emphasis added). That provision, 26 U.S.C. § 3121(g) (2012), states that "the term 'agricultural labor' includes all service performed-(1) on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity."
The other federal provision referenced in Minn. Stat. § 268.035, subd. 2(a) -section 31.3121(g)-1 in title 26 of the Code of Federal Regulations-provides that "[t]he term 'agricultural labor ' as defined in section 3121(g) [in title 26 of the United States Code] includes services of the character described in paragraph (b) ... of this section." 26 C.F.R. § 31.3121(g)-1(a) (2018). Paragraph (b), in turn states that:
Services performed on a farm by an employee of any person in connection with any of the following activities constitute agricultural labor : (i) The cultivation of soil; (ii) The raising, shearing, feeding, caring for, training, or management of livestock, bees, poultry, fur-bearing animals, or wildlife; or (iii) The raising or harvesting of any other agricultural or horticultural commodity.
Id. , para. (b)(1) (2018) (emphasis added).
In sum, if a person helps with raising agricultural products, that person performs "agricultural labor" under the federal definitions. And if a person performs "agricultural labor" under the incorporated federal provisions, the person is engaged in "covered agricultural employment," and the person's wages are subject to unemployment-insurance taxation under Minnesota state law.
With these statutory provisions in mind, we turn to the parties' arguments.
A.
Svihel Farm argues that the court of appeals erred in determining that the H-2A and J-1 visa workers performed farm work that is "covered agricultural employment" and that Minnesota unemployment-insurance taxes therefore accrued on the visa workers' wages. The parties agree that if other workers-United States citizens or permanent residents, for example-cultivate *396 fruits and vegetables on Svihel Farm (as the visa workers did), that work is "covered agricultural employment." The only issue before us is whether, as Svihel Farm contends, the cultivation of fruits and vegetables by visa workers is excluded from the definition of "covered agricultural employment." We conclude that it is not.
As noted above, the visa workers that Svihel Farm sponsors help with the growing and selling of the farm's products. These workers indisputably perform services "on a farm, in the employ of any person, in connection with cultivating the soil, or in connection with raising or harvesting any agricultural or horticultural commodity." See 26 U.S.C. § 3121(g)(1). The visa workers therefore satisfy the definition of section 3121(g), which is one of the federal definitions that Minn. Stat. § 268.035, subd. 2(a), incorporates.
The visa workers also satisfy the other definition that section 268.035, subdivision 2(a), incorporates, found in the Code of Federal Regulations. The visa workers perform services on a farm as an employee of a person "in connection with ... activities [that] constitute agricultural labor," specifically, "(i) [t]he cultivation of the soil" and "(iii) [t]he raising or harvesting of any other agricultural or horticultural commodity." See 26 C.F.R. § 31.3121(g)-1(b)(1).
The visa workers thus performed services for Svihel Farm that unambiguously constituted "agricultural labor" under the plain language of the federal definitions that Minn. Stat. § 268.035, subd. 2(a), incorporates. Because the visa workers perform "agricultural labor" under the federal definitions, they are engaged in "covered agricultural employment." Id. , subd. 12(b). And, because the visa workers are engaged in "covered agricultural employment," their work is "covered employment" and subject to unemployment-insurance taxation. See Minn. Stat. § 268.051, subd. 1(a).
B.
In urging us to reach the opposite conclusion, Svihel Farm asks us to apply a more searching statutory analysis of the relevant federal laws. Svihel Farm does not dispute that the visa workers "cultivated soil" and tended to and harvested crops. And Svihel Farm also does not dispute that other employees who perform the very same type of work-United States citizens or permanent residents, for example-are "covered employees" under Minnesota's unemployment-insurance statute. Rather, Svihel Farm contends that the visa workers are exempted from the federal definitions incorporated by the Minnesota unemployment-insurance tax statute. Specifically, Svihel Farm argues that "each of these [federal] authorities excludes temporary nonimmigrant workers from taxation" and that "Minnesota's unemployment insurance tax law necessarily follows suit."
To support the contention that visa workers fall outside the federal definitions of "agricultural labor," Svihel Farm relies on two phrases used in the federal definitions: the phrase "in the employ of " in 26 U.S.C. § 3121(g)(1), and the phrase "performed on a farm by an employee " in 26 C.F.R. § 31.3121(g)-1(b)(1). (Emphases added). In essence, Svihel Farm argues that because these phrases are used in the definitions of "agricultural labor," that labor must necessarily be performed by someone who falls within "employment "-a separate term with a federal definition that the visa workers do not satisfy.
Specifically, Svihel Farm argues that "[t]o determine whether an individual is performing these services 'in the employ' of another, one must turn to the definition of employment" found in *397 26 U.S.C. § 3121(b). And section 3121(b)(1) creates an exception to employment for the visa workers whose wages are at issue in this case. Svihel Farm concludes that because "temporary nonimmigrant foreign workers are not included in the definition of 'employment,' " they "cannot perform services 'in the employ' of another for the purposes of FICA," which "necessarily excludes temporary nonimmigrant foreign workers from FICA's definition of 'agricultural labor.' " We are not persuaded.
Svihel Farm's position disregards the fact that the Minnesota unemployment-insurance tax statute incorporates only the federal definitions of a single term: "agricultural labor." See Minn. Stat. § 268.035, subd. 2(a). Svihel Farm's textual arguments rely almost exclusively on the federal definition of "employment" in arriving at its conclusion that unemployment-insurance taxes do not accrue on visa workers' wages under the Minnesota unemployment-insurance tax statute. But the Minnesota unemployment-insurance tax statute does not incorporate the federal definition of the term "employment." The Legislature certainly could have said that Minnesota's unemployment-tax liability mirrors federal unemployment-tax liability, but it did not do so. The Legislature imported only the definition of "agricultural labor" into Minnesota's unemployment-insurance tax statute; it did not incorporate the federal unemployment-insurance taxation scheme wholesale. And the issue is not whether the visa workers are excluded from taxation under federal law. That some visa workers' wages are exempt from federal unemployment-insurance taxation is unconnected to the question of whether those wages are covered wages for the purpose of Minnesota's unemployment-insurance tax statute. Accordingly, Svihel Farm's reliance on these other provisions in federal law is misplaced.
Svihel Farm's argument also misapprehends the federal regulatory scheme. Under the federal scheme, being an "employee" who performs "agricultural labor" and being in "employment" are not the same. In defining "agricultural labor," the federal statute and regulations do not require that someone be in "employment." Rather, the federal statute and regulations specifically require that services on a farm be performed "in the employ of any person" or "by an employee of any person." See 26 U.S.C. § 3121(g)(1) ; 26 C.F.R. § 31.3121(g)-1(b)(1). Visa workers fall squarely within the definition of "employee" set forth in 26 U.S.C. § 3121(d)(2) (2012), which provides that "[f]or the purposes of this chapter, the term 'employee' means ... any individual who, under the usual common law rules applicable in determining the employer-employee relationship, has the status of an employee." Svihel Farm has not argued-nor could it plausibly contend-that the visa workers are not employees within that broad definition.
Although the visa workers are "employees" under the federal definition, Svihel Farm appears to be correct that the visa workers do not fall within "employment" under the federal definition. More accurately, they fall within an exception to "employment" under the federal unemployment scheme. See 26 U.S.C. § 3306(c)(1)(B) (2012). But both section 3306 of the United States Code and section 31.3121(b)(1)-1(c) of the Code of Federal Regulations explicitly contemplate that a worker can perform agricultural labor and nevertheless fall within an exception to employment. See 26 U.S.C. § 3306(c)(1) (2012) (excluding from "employment" certain "agricultural labor"); 26 C.F.R. § 31.3121(b)(1)-1(c) (2018) ("Services performed after 1956 by a foreign agricultural worker lawfully admitted to the United States from any foreign country or possession *398 thereof, including the Republic of Mexico, on a temporary basis to perform agricultural labor are excepted from employment. ") (emphasis added).
Most of the other exceptions to FUTA's definition of employment in section 3306(c) use language such as "in the employ of," "employee," and "employed by" to describe work that nevertheless is not "employment" under federal law. See 26 U.S.C. § 3306(c)(3)-(13), (16), (20) (2012). Svihel Farm is correct that its visa workers are not in "employment" under the federal scheme. But Svihel Farm's position relies on treating the terms "employ" and "employee"-as they are used in 26 U.S.C. § 3121(g) and 26 C.F.R. § 31.3121(g)-1(b)(1) -as synonymous with being in "employment" under the federal scheme. Svihel's position is unpersuasive because the definitions of the terms "employment" and "employee" under federal law are distinct.
The Code of Federal Regulations explicitly acknowledges the mismatch between the terms "employee" and "employment," stating that "[a]lthough an individual may be an employee under this section, his services may be of such a nature, or performed under such circumstances, as not to constitute employment. " 26 C.F.R. § 31.3121(d)-1(a)(5) (2018) (emphasis added). Although the federal framework is somewhat counterintuitive, its provisions taken together-and especially this latter one-are fundamentally incompatible with Svihel Farm's contention that a worker must fall within "employment" in order to perform "agricultural labor."
In sum, the plain language of the federal definitions of "agricultural labor" require only that "employees" or workers "in the employ of" a person perform certain types of agricultural services. The visa workers were employees, they were in the employ of Svihel Farm, and they performed services that fall within the federal definitions of "agricultural labor." The visa workers whose wages are at issue in this case therefore performed "covered agricultural employment" as that phrase is defined in Minn. Stat. § 268.035, subd. 11(a). Accordingly, we hold that Svihel Farm must pay unemployment-insurance taxes on these workers' wages.
CONCLUSION
For the foregoing reasons, we affirm the decision of the court of appeals.
Affirmed.

Although there is no dispute that these individuals were "employees" in the everyday sense of the word, we do not refer to them as employees because the parties contest the meaning of the term "employee" under federal law.

The H-2A visa program allows employers to sponsor nonimmigrant temporary or seasonal agricultural workers. See Richard D. Steel, Steel on Immigration Law § 3:15 (2018-2019 ed. 2018). A petitioning employer "must show that there are not sufficient able, willing, and qualified U.S. workers available to perform the temporary and seasonal agricultural employment for which the employer desires to import nonimmigrant workers and that the employment of H-2A workers will not adversely affect the wages and working conditions of workers in the U.S. who are similarly employed." Id. H-2A visa workers sponsored by Svihel Farm performed farm work such as harvesting fruits and vegetables.
The J-1 visa program, by contrast, is a visitor exchange program with a cultural component that allows participants to gain experience and receive training. Id. § 3:18. A J-1 visa program "must offer or make available to exchange visitors a variety of cross-cultural activities determined by the needs and interests of particular categories of exchange visitors." Id. J-1 visa workers sponsored by Svihel Farm attended fairs, visited museums, went to lakes, learned about the farm operation, and worked at farmers' markets. But in addition to these activities, J-1 visa workers sponsored by Svihel Farm performed and were paid for the same types of farm work performed by H-2A visa workers. J-1 visa workers work on Svihel Farm for only one season, whereas H-2A visa workers can return to work every season.

Under Minn. Stat. § 268.043(b) (2018), determinations that services performed for an employer were "covered employment" cannot be made "for periods more than four years before the year in which the determination is made, unless the commissioner finds that there was fraudulent action to avoid liability under [Minnesota Statutes, chapter 268]." Because DEED performed the Svihel audit in 2016 and there was no finding by the commissioner that there was fraudulent action to avoid liability, services performed by the visa workers before 2012 were not part of the tax-liability determination.

Our first step in statutory interpretation is to determine whether the statute is ambiguous. Engfer , 869 N.W.2d at 300. A statute is ambiguous only if the words, "as applied to the facts of the particular case, ... are susceptible to more than one reasonable interpretation." Staab v. Diocese of St. Cloud , 813 N.W.2d 68, 72-73 (Minn. 2012). Both parties argue that the relevant statutory provisions are unambiguous and should be construed in their favor. In the alternative, Svihel Farm contends that the statute is ambiguous but does not specifically assert that any statutory provision has two plausible readings that would give rise to an ambiguity. Because we conclude that the provisions are not ambiguous as applied here, we do not address the parties' policy or legislative-history arguments. See Minn. Stat. § 645.16 ("When the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit."); Staab , 813 N.W.2d at 73.

Minnesota Statutes § 268.035, subd. 11, was amended in 2014, but the amendment does not affect our interpretation of the provision for the purposes of this case. Compare Minn. Stat. § 268.035, subd. 11 (2012), with Minn. Stat. § 268.035, subd. 11 (2018). Accordingly, we rely on the 2018 version of subdivision 11 in this opinion.

Subdivision 20 sets forth several categories of "noncovered employment," including employment in "agricultural employment." See Minn. Stat. § 268.035, subd. 20(33) (2018). But the exception for "agricultural employment" applies only if that employment is not "covered agricultural employment" under subdivision 11. See id. Because, as we explain below, the work at issue here is "covered agricultural employment" under subdivision 11, the exception in subdivision 20(33) is not applicable.